R. M. CUNNINGHAM *et al., Appellants*, v. THE CITY OF IOLA *et al., Appellees.*

No. 17,290.

### SYLLABUS BY THE COURT.

1. CITY ORDINANCE—*Gas*—*Minimum Charges*—*Reasonable.* An ordinance enacted by a city furnishing natural gas to its inhabitants is not presumptively unreasonable because it requires a minimum charge of fifty cents a month regardless of the amount of gas used, a rental of twenty cents a month for meters furnished for the use of tenants, and also provides that owners of tenant property and not their tenants will be dealt with unless separate service pipes are supplied for each tenant using gas.

2. INJUNCTION—*Counterclaim*—*Trial by Jury Waived.* In a suit to enjoin the city from shutting off gas from plaintiffs' office building, the answer, in addition to certain defenses, set up a counterclaim for installing meters, rent thereof, and for gas used in the building. No objection was made and no demand for a jury, but after a full trial an exception was taken to the judgment. *Held*, that the plaintiffs waived the right to a jury and can not now be heard to complain.

Appeal from Allen district court. Opinion filed December 9, 1911. Affirmed.

*Frank R. Forrest,* for the appellants.

*Travis Morse,* and *G. E. Pees,* for the appellees.

The opinion of the court was delivered by

WEST, J.: The plaintiffs owned an office building in Iola, and prior to January 1, 1910, had been paying for natural gas a flat rate of fifteen cents a month for each light and $2 a month for each heating stove. December 30, 1909, the city enacted an ordinance, taking effect January 1, 1910, providing for a charge of twenty cents per thousand cubic feet for gas and a minimum charge of fifty cents per month whether fifty cents' worth was used or not. Section 1 provides that consumers shall be required to use such meters as shall be approved by the city, and that but one meter shall be furnished by the city for each service pipe taken from the mains, except "where two or more houses use gas from the same line in which case a meter shall be installed for each such house, all meters shall be set between the stop box and the distributing pipe under the supervision of the city gas inspector. . . . Where two or more independent users, use gas from the same service pipe, except as above provided, the city will look to the property owner and not to the independent user for gas rates. All meters furnished under this section shall be furnished by the city free of rent therefor, but the applicant shall pay the expense of installation." Section 2 provides that where any building is owned by two or more owners, each owning separate parts, each part shall be considered separate property, and a meter shall be furnished under section 1 for each separate part. Section 10 provides that "the city will furnish extra meters to the individual for his tenants for the monthly rental of 20 cents per meter per month, applicant to pay the cost of installation."

The plaintiffs alleged that their building was piped in pursuance of an ordinance of 1904, calling for flat rates, and that the ordinance of 1910 is void in the respects already mentioned, because unreasonable and discriminating, and prayed that the city might be en-

joined from shutting off the gas from their building and from the enforcement of the ordinance. The defendant answered, setting up the ordinance, and alleging that it was reasonable and proper; that the premises of plaintiffs consist of business houses with six or more separate business rooms upon the lower floors and a large number of offices and other rooms in the upper story, whose occupants go and come without knowledge or control of the city; that under section 1, the city installed three meters, at the request of the plaintiffs, for metering gas to the premises for the use of the occupants, for which meters no rental was charged. That, at plaintiffs' request, the city furnished seventeen smaller meters for use of their tenants, for which plaintiffs agreed to pay twenty cents per month rental per meter, which was alleged to be a reasonable charge; also, setting up a counterclaim for $127.60 for installing meters, rent thereof and gas used in the building, alleged to be due from the plaintiffs to defendant. The reply contained a general denial, an allegation of invalidity of the ordinance, and an allegation that each of the tenants was able and willing to pay for the gas consumed by him according to the meter readings. A trial was had by the court, and after considering the evidence the temporary injunction was dissolved, and a judgment rendered in favor of the defendant for the amount of the counterclaim. The plaintiffs appeal, and complain that the court erred in not holding the ordinance invalid on account of its provision making them liable for the gas used by their tenants, on account of the fifty-cent minimum charge, on account of the twenty-cent meter rental, and in holding for the defendant upon the counterclaim.

None of the evidence is brought up. The question therefore is whether in the absence of the evidence we should say that the ordinance is void for the reasons specified. The plaintiffs in their brief say that if the city has the power to prescribe rules and regulations

governing the use of gas they must be reasonable, just, lawful, uniform and equitable and not discriminatory, and we take it that the question of power to enact the ordinance, if reasonable, is conceded; certainly it is not contested in the plaintiffs' brief. It is argued that no power exists to require payment for gas not actually used and that to withhold gas from tenants amounts to a discrimination against them because they are tenants, and that to require tenants to pay a meter rental of twenty cents a month is another discrimination against them because they are tenants.

While no specific statutory authority is cited for the enactment of an ordinance fixing rates, we shall assume, as the plaintiffs apparently have done, that such power exists by implication and under the general power vested in cities of the second class to make contracts and enact ordinances. The council evidently deemed it proper and reasonable to collect fifty cents a month from each patron whether he used gas amounting to that sum during the month or not, on the theory that this minimum charge would pay for reading meters and other services performed by the city in connection with the service, although the amount of gas used in one month might not entitle the city to this sum.

The provision regarding service pipes was manifestly inserted upon the theory that the city could not as well afford to keep track of numerous tenants as could the owner of the property, unless he chose to provide for separate service pipes.

The twenty-cent rental for meters placed in buildings for the purpose of enabling the landlord to know how much gas each tenant used was doubtless deemed a reasonable compensation for the service and expense on the part of the city. What the exact circumstances were and what facts may have justified or failed to justify the council in these supposed views we do not know. No provision appears requiring anyone to pur-

chase or procure meters from the city, the provision merely being that those used must be approved by the city inspector, and if instead of purchasing seventeen meters for their tenants the plaintiffs saw fit to rent them of the city we see no reason why the required rental should not be paid.

As it is impossible to know how much gas any tenant would use during any given month or how frequently the amount would be less than 2500 cubic feet it would be a mere matter of speculation as to whether the fifty-cent minimum charge would operate as a material burden upon any consumer or not, and in the absence of any showing to that effect we can not say that it would or that the ordinance is in this respect unreasonable. The provision would apply only to the three meters used for metering gas to the premises, and there is nothing to indicate that less than 2500 feet would pass through either one of these in a month.

The requirement that a landlord either provide separate service pipes or be responsible for all the gas used in his building is said to be a discrimination against tenants merely because they are tenants, although they be ready, able and willing to use and pay for the gas desired by them. The plaintiffs cite as authorities upholding this contention, Thornton on The Law Relating to Oil and Gas, §§ 526, 536, and *State v. Butte Water Co.*, 18 Mont. 199, 44 Pac. 966, 32 L. R. A. 697, which holds that the refusal of a water company to supply water to a tenant in the possession of a house, when he is ready to pay for it in advance, can not be justified by a by-law declining to contract for water except with owners or their authorized agents. But that was the case of one tenant in possession and occupancy of a house, and not one in which a tenant in an office building demanded the service. It is not deemed, however, that this provision was made for the purpose of discriminating against tenants, but rather for the purpose of treating tenant property as

a whole and dealing with the owner who can be found and who can more reasonably look after his tenants than can the gas company or the city. If, for instance, in the property here involved, there are seventeen tenants coming and going, it is not unreasonable to require the landlord, who has full control over the question as to who shall occupy his rooms, to attend to the matter of gas service, and it is not less reasonable than to require the city, which has no such control, to furnish to, and collect from, every tenant who for a time long or short may desire to use gas. True, the city might partially protect itself by requiring advance payment, but it does not follow that it must resort to this sort of protection only. If tenants should find that landlords will not arrange for gas service the natural result would be a loss of their patronage and their selection of a landlord who would insure them gas service, so that, practically, it can not be said that they are left at the mercy of the property owner. In *Kelsey v. Board of Fire & Water Commissioners*, 113 Mich. 215, 71 N. W. 589, 37 L. R. A. 675, the Michigan supreme court held that when the municipal charter provided for furnishing water to the owners or occupants of houses and other buildings and the rules provided for dealing with owners and not with tenants, the duty of furnishing water to each tenant separately and collecting for it could not by the owner be imposed on the board of water commissioners. It was there held to be a reasonable regulation to deal directly with the owner, and decisions of other courts holding similarly were cited. Here the gas goes to the building through three service pipes, each supplied with a meter. In case a tenant using one of the seventeen small meters should refuse to pay, the city could not shut off his gas except by shutting off one of the three service pipes, and thereby cutting off the supply of several other tenants; while if the landlord had provided a separate service pipe for each tenant each could then be required to pay or be

deprived of gas without interfering with the supply of any other tenant.

The regulation being one contained in an ordinance it is presumptively reasonable until the contrary is shown or unless it is unreasonable or discriminatory on its face. Having none of the evidence before us, and it not appearing *prima facie* unreasonable but reasonable, it must for the purposes of this case be upheld.

The complaint that a counterclaim was considered and passed upon without the intervention of a jury, and in an injunction suit, is fully answered by the fact that no objection or request for a jury appears to have been made. There was an exception to the judgment, but this was too late. Section 296 of the civil code provides that in actions arising on contract a jury may be waived by written consent, filed with the clerk, or by oral consent in open court, entered in the journal. In *Cavenaugh v. Fuller,* 9 Kan. 233, cited by the plaintiffs, a demand for a jury was refused. *Beery v. Naylor,* 65 Kan. 368, 69 Pac. 347, is also cited, which holds that in an action on a creditor's bill where no second judgment was prayed for it was error to render a money judgment. It was expressly decided in *The State v. Cutler,* 13 Kan. 131, that where the parties try an action before a judge at chambers without any objection or exception to the action of the judge in trying the case without a jury, they will be held to have waived a jury trial. The general rule is that the waiver may be by any conduct or acquiescence inconsistent with an intention to insist on a jury trial. (24 Cyc. 154.) The plaintiffs are presumed to have known their rights, and having failed to assert them at the proper time they can not be heard to do so now.

The judgment is affirmed.