No. 33,042

THE STATE BANK OF STELLA (NEBRASKA), *Appellee,* v. GUST MORITZ et al. (OPAL STELLA MORITZ and ELMER A. MORITZ, Interpleaders), *Appellants.*

(69 P. 2d 15)

Opinion filed June 12, 1937.

*T. M. Lillard, O. B. Eidson, Philip H. Lewis,* all of Topeka, and *Henry F. Schepman,* of Falls City, Neb., for the appellants.

*C. E. Vance, Clifford R. Hope, A. M. Fleming,* all of Garden City, and *Jean B. Cain,* of Falls City, Neb., for the appellee.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action by the State Bank of Stella, Neb., against the late Gust Moritz to recover judgment on a promissory note for $5,300, dated December 16, 1931.

The note had been secured by a second mortgage on the obligor's farm in Richardson county, Nebraska, and when the first mortgage on that farm was foreclosed this note was also reduced to judgment in a court of competent jurisdiction in that state.

Afterwards, by leave of the Nebraska court, this note was withdrawn for the purpose of being sued on in this action in the district court of Finney county, Kansas.

Ancillary to the present action, plaintiff sued out an attachment on a quarter section of Finney county land which had been the property of Mary Moritz, wife of defendant, who died intestate in 1924, leaving as her statutory heirs her husband, Gust Moritz, and their three adult children, Jesse J. Moritz, Elmer A. Moritz and May Q. Moritz Steer. Mrs. Moritz also left eighty acres of land in

Nebraska. Under Kansas law an undivided half of the Kansas land devolved on defendant and the remaining half devolved on his two sons and daughter—one sixth to each. The Nebraska land devolved in much the same way, in proportions of one third to defendant and two thirds to the three children—two ninths to each.

Gust himself owned one hundred and sixty acres of land in Nebraska on which he had resided for half a century. Until the last few years he seems to have been a man of means; but apparently he was in financial difficulties about the time the incidents occurred which provoked this lawsuit.

There was no substantial dispute of fact touching the maker's liability on the note sued on. Nor was any issue of law raised on the ground that the note had been reduced to judgment in a Nebraska court and therefore it could no longer serve as a basis for a cause of action. (See *Price v. Bank,* 62 Kan. 735, 64 Pac. 637, 84 A. S. R. 419; *Hayes Bros. v. Waggener,* 98 Kan. 740, 743, 161 Pac. 584; *City of Topeka v. Ritchie,* 102 Kan. 384, 387, 170 Pac. 1003; *Exchange State Bank v. Central Trust Co.,* 127 Kan. 239, 243, 273 Pac. 477.) But the rule is absolute that legal questions not fairly raised and clearly presented in the district court are not open to consideration on appeal. (*Kelly v. Insurance Co.,* 101 Kan. 636, 168 Pac. 686; *Koshka v. Railroad Co.,* 114 Kan. 126, 217 Pac. 293; *Collis v. Kraft,* 118 Kan. 531, 235 Pac. 862; *Koury v. Rapalino,* 124 Kan. 582, 261 Pac. 578; *Clark v. Linley Motor Co.,* 126 Kan. 419, 422, 268 Pac. 860.)

The matter which was stoutly contested in two trials in the court below, and which is still the principal subject of controversy in this appeal arose out of a conveyance dated September 30, 1931, by Gust Moritz of his undivided one half interest in the Finney county land to his two sons and daughter.

The plaintiff contended that the conveyance was made to hinder, delay and defraud the bank. The two sons and the daughter of defendant were permitted to interplead, and their evidence tended to show that various substantial considerations moved from them collectively and separately to their father. One such consideration was that defendant had appropriated to his own use the children's shares of the rents of the property for eight years—from the death of Mrs. Moritz in 1924 until the date of the conveyance, September 30, 1931. The land was irrigated, and the gross rents for that period aggregated over $6,000. So far as concerned the evidence to show other

substantial consideration on the part of the daughter for the interest conveyed to her, that matter was well established, irrespective of the fact that Gust had appropriated her share of the rent for eight years.

At the first trial the court found generally in favor of the interpleaders; but later it set aside its findings and judgment in favor of the two sons Jesse and Elmer Moritz, and granted a new trial as to them. But the court's final holding was that the deed of September 30, 1931, was valid as between Gust Moritz and his daughter, May C. Moritz Steer. Neither of the parties appealed from that judgment, so the propriety of regarding the single instrument of conveyance as valid to the daughter but invalid as to her two brothers is not open to this review.

There was a change of judges before the second trial, and an advisory jury was called to assist the court.

It was shown in evidence that on January 24, 1931, Gust Moritz had made a property statement to plaintiff, under oath, in which he listed the Finney county land as *his* property, and the space for an answer to the question concerning any amount he owed relatives was in *blank*. The same statement also showed that he had personal property of the value of $4,220. His liabilities at that time were the first mortgage indebtedness on his Nebraska land, $15,000, and $4,975 due plaintiff, which with interest became the indebtedness of $5,300 evidenced by the note of December 16, 1931, sued on in this action.

It was also shown that in the summer of 1931 the plaintiff bank repeatedly requested settlement of his indebtedness to it. Not until December 16, 1931, did defendant execute to the bank the note sued on, at which time he gave a second mortgage on his own quarter section of Nebraska land and the eighty acres he and his children had inherited from his wife. The scrivener who drew the deed of September 30, 1931, which conveyed defendant's interest in the Finney county land to the interpleaders, testified that he inserted in the deed as the consideration therefor, the words "one dollar and love and affection" without direction from anybody.

The advisory jury made findings of fact, the most significant of which read:

"3. After the death of Mary Moritz in April, 1924, was it the intention of the defendants, Elmer A. Moritz and Jesse J. Moritz, that their father, Gust Moritz, should collect all the rents that might come from the Finney county

land without obligation on his part to subsequently account to them for their part of the same? A. No.

. . . . . . . . . . . . . .

"9. Did Gust Moritz sign the property statement dated January 24, 1931? A. Yes.

. . . . . . . . . . . . .

"11. Did the plaintiff bank extend credit or grant an extension of time of payment relying upon the property statement of Gust Moritz dated January 24, 1931? A. Yes.

"12. Did the plaintiff request settlement of the indebtedness of Gust Moritz to such bank some time in the summer of 1931? A. Yes.

. . . . . . . . . . . . .

"15. Did the deed that was executed by Gust Moritz to his three children of September 30, 1931, conveying the Finney county quarter section, have the effect of delaying and hindering the plaintiff bank in the collection of the obligation of Gust Moritz to said bank? A. Yes.

"16. Was the deed of September 30, 1931, referred to in question No. 15, executed and delivered with the intent on the part of Gust Moritz and his two sons of hindering, delaying or defrauding the plaintiff bank in the collection of its debt? A. No.

"17. What was the consideration for the deed executed by Gust Moritz to his sons Elmer and Jesse Moritz for the Finney county land? A. One dollar ($1), love and affection.

"18. Was the deed for the Finney county land from Gust Moritz to his sons executed by him with the intention on his part to hinder, delay or defraud the plaintiff as one of his creditors? A. No.

"19. What do you find was the fair market value of the 240-acre Moritz farm in Richardson county, Nebraska, on September 30, 1931? A. $22,110."

The trial court approved these findings and added two others, which read:

"1. That the interest of Gust Moritz in the property conveyed to his children by the quitclaim deed was at the time of said conveyance of the value of. $4,000.

"2. That at the time the deed was made Gust Moritz was in a failing condition and that the effect of the conveyance of his interest in the Finney county land was that it did not leave sufficient estate to pay his debt to the plaintiff bank."

Judgment was entered for plaintiff, and the interpleaders appeal. Their principal contention is that the findings and undisputed evidence entitled them to judgment. If the other points urged against the judgment require attention they will be noticed as we proceed.

At the onset it is pertinent to remark that it is not illegal for a debtor to pay one creditor what he actually owes him, even if the result is to leave the debtor with insufficient assets to pay his obligations to other creditors. In *Brecheisen v. Clark*, 103 Kan. 662,

176 Pac. 137, certain conveyances whereby a debtor in failing circumstances transferred a parcel of land to his wife were challenged on the alleged ground that they were made to hinder, delay, and defraud the plaintiff creditor. In affirming the judgment for defendant this court said:

"So long as he acts in good faith to recover his due on a preëxisting and unsatisfied indebtedness, a creditor is entitled to accept what is coming to him and need not concern himself as to the effect upon other creditors, nor with the motives of the debtor in preferring him to others." (p. 665.)

The pertinent syllabus reads:

"A debtor in failing circumstances may prefer one creditor to others, and so long as that creditor receives such preferment in payment for a bona fide preëxisting indebtedness, having given adequate consideration therefor, such creditor commits no fraud on other creditors; and it is immaterial that the satisfaction of her due may result in exhausting the debtor's assets to the prejudice of other creditors; and the motives of the debtor in preferring her to other creditors, although she may be aware of them, are immaterial so long as the creditor does nothing to create those motives and acts solely to obtain fair satisfaction of what is justly due her." (Citations.)

In the late case of *Peoples State Bank v. Dierking,* 143 Kan. 617, 618, 619, 56 P. 2d 85, where conveyances were set aside in the district court at the instance of a creditor on the alleged ground that when made the grantor was in failing circumstances, and that their execution left him with insufficient assets to satisfy his other creditors, this court said:

"So far as the findings of fact and the evidence disclose the situation, we have nothing more than a preference of certain creditors on the part of a debtor." (p. 620.)

In the opinion the familiar rule was reiterated:

"It is well settled that a debtor may prefer a bona fide creditor over another so long as he acts in good faith, and the fact that the creditor he prefers happens to be a close relative is no evidence of bad faith, if the debt is proven to exist and the property conveyed to the creditor bears a reasonable relationship to the debt."

Recent cases to the same effect are *Robertson v. Andrus,* 125 Kan. 730, 266 Pac. 53, and *Penalosa State Bank v. Calista Grain and Mercantile Co.,* 128 Kan. 132, 276 Pac. 70.

In the instant case it will be observed in finding No. 3 that the two sons and daughter of Gust Moritz did not intend that he would not be under obligation to account to them for his appropriation of their shares of the rent for eight years. Clearly Gust Moritz was indebted to his children for a very considerable sum at the time he

conveyed his interest to them. Attention should next be called to findings Nos. 16 and 18, wherein the jury expressly and repeatedly found that the conveyance was not made "with the intent on the part of Gust Moritz and his two sons of hindering, delaying or defrauding the plaintiff bank."

The trial court approved these findings. Why, then, should not the oft-repeated rule of *Brecheisen v. Clark,* supra, govern this case? The evidence was conclusive that the father had received the proceeds of his children's shares of the land for eight years. The fair implication of finding No. 3 was that the father was to account to his children some time; findings 16 and 18 foreclosed all question that in the making of the deed there was any intention on the part of grantor or grantee that the deed was made to defraud the bank.

This conclusion reduces to little consequence the other matters discussed in the briefs. Touching finding No. 17, it is clear that the jury was only repeating the literal language of the deed. The notary gave the only evidence on the subject and that finding should have been set aside or disregarded as of no significance. Finding No. 15 is no justification for setting aside the deed, under the rule of *Brecheisen v. Clark,* supra.

The correctness of the trial court's own second finding is challenged on the ground that it is contrary to the evidence. Finding No. 19 was that the Nebraska land was worth $22,110 on the date defendant conveyed his interest in the Finney county land to his children. The record does not show that on that date Gust Moritz had debts aggregating that amount. Moreover, a few months previously Gust's property statement showed that he had $4,220 worth of personal property. There could be no presumption that on September 30 all that property had been dissipated. Our reading of the record, ignoring all the evidence which the trial court may have discredited, leads us to conclude that in the autumn of 1931 plaintiff's request for a settlement of his indebtedness to it (finding 12) prompted Gust Moritz to pay his children what he owed them while his failing means (court's finding No. 2) still enabled him to do so. We do not overlook the fact that the trial court discredited the testimony of the interpleaders which was offered to show other considerations moving from them to the father. That was the trial court's privilege; and indeed much of that evidence, if not all of it, was rather effectively disproved. But the undisputed and indisputable evidence touching defendant's appropriation of the interpleaders' shares of the rents for eight years, together with findings Nos. 3, 16

and 18, compel the rendition of judgment in favor of the interpleaders. To that end the judgment must be reversed and the cause remanded with instructions to enter judgment for appellants.

HUTCHISON, J. (dissenting): I cannot concur in the above decision because I have been unable to find anywhere in the record that the alleged errors, which appear to be the basis for the reversal urged by the appellants and are embodied as such in the opinion, were ever called to the attention of the trial court so as to afford that court an opportunity to correct the same before the appeal to this court was taken. It was held in *Willt v. Feikert*, 139 Kan. 22, 29 P. 2d 1078, that—

"Errors occurring at the trial and not brought to the attention of the trial court by a motion for a new trial are deemed to be waived and cannot be urged in the supreme court as a ground for reversal." (Syl.) (See, also, *Buettinger v. Hurley*, 34 Kan. 585, 9 Pac. 197.)

It was held in *Skibbie v. Liberty Life Ins. Co.*, 130 Kan. 121, 285 Pac. 581, that—

"Alleged errors not brought to the attention of the trial court cannot form a basis for review in an appellate court." (Syl. ¶ 3.)

This rule applies to findings of fact as well as other errors.

In the case of *Kellog v. Bissantz*, 51 Kan. 418, 32 Pac. 1090, which was an action for the recovery of money and to determine the validity and priority of several mechanics' and other liens, it was stated:

"It was alleged as error that matters material to the validity of the liens were not stated in the special findings. Upon some material matters no findings were made, and upon others the findings were general and indefinite. No request was made for other or more specific findings, and none of those made are inconsistent with the judgment. *Held,* That, in the absence of the evidence or any request for other or more specific findings, no substantial error is shown." (Syl.)

In *Else v. Freeman*, 72 Kan. 666, 83 Pac. 409, it was said:

"Where the court, in making special findings, failed to cover all the issues involved, and its attention was not called to the omission, and further findings were not requested, it was held that plaintiff had waived the right to complain." (Syl. ¶ 1.)

In *Moorhead v. Edmonds*, 99 Kan. 343, 161 Pac. 610, it was held:

"A judgment will not be reversed because a trial court's findings of fact are incomplete and do not state all the facts connected with those found, where no request was made for further, clearer, or additional findings." (Syl. ¶ 1.)