No. 36,530

LeRoy Swift, *Appellee*, v. Kelso Feed Company, and Equity Mutual Insurance Company (Insurance Carrier), *Appellants*.

(168 P. 2d 512)

Opinion filed May 4, 1946.

*J. E. Schroeder*, of Kansas City, argued the cause, and *Arthur J. Stanley, Arthur J. Stanley, Jr., Lee E. Weeks* and *Leonard O. Thomas*, all of Kansas City, were on the briefs for the appellants.

*Joseph Cohen*, of Kansas City, argued the cause for the appellee.

The opinion of the court was delivered by

Harvey, C. J.: This was a workmen's compensation case. There were two respondents; Ted Johnson, who was claimant's employer. He did not operate under the workmen's compensation act, hence

no award was made against him. The other respondent was the Kelso Feed Company, Inc., and its insurance carrier. It operated under the workmen's compensation act. The court made an award for claimant against the feed company and its insurance carrier and they have appealed.

No question is raised about the amount of the award if claimant is entitled to any award against the feed company. The legal question involved is the construction of our statute (G. S. 1935, 44-503) as applied to the facts. It was stipulated that the relation of employer and employee existed between Johnson and claimant; that plaintiff received personal injury by accident arising out of and in the course of his employment; that respondents had due notice of the injury, and that the claim for compensation was made in time. Respecting the business of the feed company and the relation of Johnson and the claimant to it the court found:

"That said Kelso Feed Company, Inc., is engaged in the business of selling at wholesale, hay, grains and feeds, particularly cattle feed and poultry feed; that said merchandise is sold at a nondelivery price, and at a price which includes delivery, and said prices are paid to the Kelso Feed Company; that when merchandise is sold for a delivery price, the Kelso Feed Company, Inc., collects the entire price, including costs of the delivery, which is added on to the sale price.

"That prior to 1943, the Kelso Feed Company, Inc., owned its own fleet of trucks and delivered its own merchandise by means of said trucks, manned by its own employees; that in 1943 it made an arrangement with the respondent Ted Johnson, whereby the latter furnished his own trucks and his own employees for the delivery of such merchandise for the Kelso Feed Company, Inc., and that a verbal arrangement was made between the said respondents whereby the said Ted Johnson was paid by the said Kelso Feed Company, Inc., so much per ton for the delivery in Kansas City of the merchandise which Kelso Feed Company, Inc., had sold on a delivery price; . . . that said Ted Johnson kept his trucks in the garages owned by the Kelso Feed Company, Inc., without charge. . . .

"That the Kelso Feed Company, Inc., is liable to the claimant for workmen's compensation under the provisions of Section 44-503, G. S. 1935, for the reason that Ted Johnson, in making the deliveries of merchandise sold by the respondent Kelso Feed Company, Inc., at a delivery price, had undertaken to execute work which was a part of the business of the Kelso Feed Company, Inc., and which the Kelso Feed Company, Inc., had contracted to perform.

"That the claimant met with personal injuries by accident on or about the 27th day of October, 1944, when he fell from the top of a load of hay which was being delivered by Ted Johnson for the Kelso Feed Company, Inc., at the docks of Armour and Company at Kansas City, Kansas, which caused the claimant to fall to the ground about fifteen feet and caused him to be rendered unconscious and required him to be hospitalized. . . ."

The remainder of the court's findings pertains to the extent of claimant's injury, his wages, and to the award, and need not be further noticed, since no question is raised concerning them.

The claimant's case rests upon that portion of our statute (G. S. 1935, 44-503) which reads:

"(a) Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then in the application of this act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed."

Counsel for appellants contend that Johnson was an independent contractor, and in support thereof rely heavily upon the opinion of this court in *Lehman v. Grace Oil Co.*, 151 Kan. 145, 98 P. 2d 430, and the authorities cited therein. In the Lehman case it was held:

"In order to render a person liable as a principal for compensation to a workman under G. S. 1935, 44-503 (*a*), it is necessary that the principal shall have undertaken to execute work which is a part of his trade or business or that he shall have contracted to perform work for another." (Syl. ¶ 2.)

And the opinion makes it clear that the real distinction is whether the contractor (or subcontractor) was undertaking to do work which was a part of the trade or business of his principal. There it was held that the moving of a house was not a part of the trade or business of an oil company operating a lease, hence that it was not liable. Here the court found that the delivery of feed by the feed company, at a price which included expense of delivery, was a part of the business of the feed company. Appellants do not contend that the finding of the trial court was not supported by substantial, competent evidence, hence it is clear that the ultimate holding in the Lehman case is not controlling here. The Lehman case, and practically all of our earlier decisions involving the statute in question, were examined in our more recent case of *Bailey v. Mosby Hotel Co.*, 160 Kan. 258, 160 P. 2d 701, where again the test applied was whether the work contracted to be done was a part of the trade or business of the principal. In view of the thorough analysis of our

earlier decisions made in the Bailey case and the conclusion there reached we deem it unnecessary to again reëxamine them. We are satisfied with the interpretation of the statute there made and that the same is controlling here.

Appellants cite subdivision (d) of G. S. 1935, 44-503, and contend it is a provision which must be satisfied before plaintiff can recover. This subdivision reads:

"(d) This section shall not apply to any case where the accident occurred elsewhere than on, in or about the premises on which the principal has undertaken to execute work or which are otherwise under his control or management, or on, in or about the execution of such work under his control or management."

Under the facts found by the trial court we think subdivision (d) does not relieve appellants from liability. The business of the feed company was not only selling but was delivering feed. In this case the place where it was delivering feed was the premises of Armour & Co., a place where it had "undertaken to execute work" which was a part of its trade or business.

Counsel for appellants attempt to draw some analogy of the statute in question and R. S. 1923, 44-505, prior to its amendment in 1927, as it now appears in G. S. 1935, 44-505. The earlier section, R. S. 1923, 44-505, was worded differently than the one under consideration and applied to a different matter. The attempted analogy is not impressive. We have considered all that was said by counsel on this point and think it would be neither helpful to appellants nor enlightening to the bar to discuss the matter in detail. We are dealing here with the statute before us. If the court's findings sustain an award under it for claimant against the feed company, as we hold, we need not bother with the analogy suggested.

We find no error in the record. The judgment of the trial court is affirmed.

Hoch, J. (concurring in the result): I concur fully in the conclusion that under the facts disclosed, the feed company was liable under section 44-503, for *compensable* injuries suffered by employees of the contractor, Johnson, while performing work under the contract. Certainly the contractor was performing services which the principal had undertaken to perform as part of its trade and business. But appellant now contends that, even though under some circumstances it might be liable for injuries suffered by employees of the contractor, it is exempted from liability under the facts of

this case by virtue of the provisions of subdivision (d) of 44-503. Whatever merit there may or may not be in this contention, I do not think that issue is here open for review. Appellee states that no such contention was presented either to the commissioner or to the trial court and that no issue arising out of subdivision (d) was raised. Appellant does not dispute the statement and the record is clear that the question is here raised for the first time.

In his comprehensive statement with reference to the history of the case and the issues raised, the commissioner stated: "The respondent contends that Johnson is an independent contractor and not a subcontractor." He made no reference to any other legal question. The record also supports appellee's contention that no issues involved in subdivision (d) were either raised or considered by the district court. The only conclusion of law indicated in the district court's journal entry relates solely to the question of whether Johnson was an independent contractor, or was a contractor under 44-503. It is true that the trial court referred to "section 44-503," of which (d) is a subdivision, but the only finding relative to the section was that the feed company was liable "under the provisions of section 44-503, G. S. 1935, *for the reason that Ted Johnson* in making deliveries of merchandise sold by the respondent, Kelso Feed Company, Inc., at a delivery price, *had undertaken to execute work* which was a part of the business of the Kelso Feed Company, Inc., and *which the Kelso Feed Company, Inc., had contracted to perform.*" (Italics supplied.) Certainly if the feed company had contended that it was exempted from liability in this instance because the facts brought the case within the exception provided in (d), the trial court would have made some reference to so vital a question.

The rule that legal questions not submitted to the trial court are not open to appellate review is too well established to require citation of authorities. Citing many of our own decisions, it was stated in. *State Bank of Stella v. Moritz,* 146 Kan. 23, 24, 69 P. 2d 15:

"But the rule is absolute that legal questions not fairly raised and clearly presented in the district court are not open to consideration on appeal."

Some exceptions to this general rule have been recognized, such as, for instance, cases involving the public interest or fundamental rights. But no contention is here made that this case falls within any such exceptions.

The rule is not an arbitrary one, but is founded on many and

sound considerations (3 Am. Jur. 25-32; 4 C. J. S. 430-434). One of the many reasons for the rule is that otherwise there would be no assurance of any end to the litigation. If a judgment were reversed on a question of law not raised in the trial court, the unsuccessful party could prolong the litigation by raising some new question of law in successive appeals.

This general rule is fortified in the instant case by the additional rule that a party claiming to come under an exception or an exemption in the statute must make such claim in the trial court.

If the appellant can escape liability in this case, it is solely by virtue of the exception provided in subdivision (*d*). Subdivision (*d*) involves far-reaching questions which should first be considered by a trial court. On this record, I do not think we should determine such important issues, and therefore express no view as to the proper construction or applicability of subdivision (*d*) in the instant case. No exemption under subdivision (*d*) having been claimed in the court below, I concur in affirmance of the judgment.

WEDELL, J. (dissenting): Counsel for appellee, the workman, insists this court should not consider subdivision (*d*) of G. S. 1935, 44-503, which states the exceptions under which the principal is not liable for injuries suffered by an employee of his contractor and under which a contractor, as principal, is not liable for injuries suffered by an employee of his subcontractor. Appellee contends the exception provision is raised for the first time by appellants in this court and that alleged errors not brought to the attention of the trial court cannot form the basis for review, citing *Toops v. Atchison, T. & S. F. Rly. Co.*, 128 Kan. 189, 277 Pac. 57; *State Bank of Stella v. Moritz*, 146 Kan. 23, 69 P. 2d 15. A majority of this court has, however, concluded the exception provision should be considered, interpreted and applied.

I am unable to agree with the interpretation placed by the majority on subdivision (*d*) of the statute. The pertinent portions of the statute, subdivisions (*a*) and (*d*), read:

"(*a*) Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable

to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then in the application of this act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed. . . (*d*) This section shall not apply to any case where the accident occurred elsewhere than *on, in or about the premises on which the principal has undertaken to execute work or which are otherwise under his control or management, or on, in or about the execution of such work under his control or management.*" (Emphasis supplied.)

It, of course, will be observed immediately that subdivision (*d*) expressly provides the principal, Kelso Feed Company, would not be liable to the workman of the contractor who was delivering feed for the principal unless the accident occurred "on, in or about the premises on which the principal has undertaken to execute work," or unless the accident occurred "on, in or about the premises" which are otherwise under the principal's "control or management."

It seems to me the above exceptions exclude liability of the principal for the injury which occurred to the workman of Johnson, the delivering contractor, at the loading docks of Armour and Company. It will be well to first consider the meaning of the words "on, in or about." I find no interpretation of those words in this statute by this court where delivery of merchandise is involved. We may, however, turn to another statute which formerly contained those precise words and see how this court interpreted them with reference to the premises on which the principal conducted his hazardous trade or business. I am referring to R. S. 1923, 44-505. That was the general statute which designated the industries, trades or businesses to which the compensation act applied. Before that statute was amended in 1927, the pertinent portion read as follows:

"That this act shall apply only to employment in the course of the employer's trade or business *on, in or about* a railway, factory, mine. . . ." (Emphasis supplied.)

In the 1927 revision of the compensation act the words "on, in or about" were eliminated from that particular section of the act. All lawyers familiar with the compensation law now thoroughly understand the change in that particular section. In fact, the elimination of the words, "on, in or about" from that particular section of the act is now so well understood that it frequently is

assumed those words have been eliminated from the entire compensation act. The assumption, as we have seen, is erroneous and we are obliged to guard against the erroneous assumption if we are to arrive at a proper interpretation of the statute under consideration.

The phrase "on, in or about" was often construed by this court before it was eliminated from R. S. 1923, 44-505. *Where,* within the meaning of the phrase "on, in or about a railway, factory, mine . . . .," did this court say the *principal* had undertaken to execute work so as to make him liable for injuries suffered by workmen which the principal had directly employed and who were under the *principal's* "control or management"? The phrase was never construed as it is by the majority in the instant case. The word "about" was said to be "one of locality and not of mere association or connection." (*Hicks v. Swift & Co.,* 101 Kan. 760, 762, 168 Pac. 905 [1917].)

In *Bevard v. Coal Co.,* 101 Kan. 207, 165 Pac. 657, (1917), a workman was employed directly by the principal, the coal company. He was injured between two mines of his employer while sent on a necessary errand. The petition was held demurrable for the reason the accident did not occur "on, in or about" a mine within the meaning of the statute. This court said:

"The act is a restricted one. Employments especially and inherently dangerous to life and limb, and none other, were included. The hazards were the necessary and peculiar hazards attending railroading, factory work, mining and the like. There is no anomaly in distinguishing between trainmen and yardmen working on or about a railroad, and railroad employees working in a distant office building where they are as secure from the peculiar hazards incident to railroading as the employees of a bank. *Likewise, a factory drayman when in the course of his employment elsewhere than at the factory is no more exposed to extraordinary risk from the nature, or condition of the work carried on there than a grocer's drayman. Consequently the act was extended, not to employment in the course of the employer's business generally, or wherever conducted, but the employer's business at designated places.* The superficies of a mine was particularly described (§ 5903, subdiv. c) and to ignore the plain limitation to locality would be to ignore the principle of classification which lies at the foundation of the act.

"The 'on or in, or about' limitation has been dropped from the British workmen's compensation act, except with respect to premises on which a principal undertakes to do work which he procures to be executed by subcontractors, and has been omitted from American statutes framed in the light of recent models. The omission accounts for the dearth of helpful American authorities. The radical enlargement of the scope of workmen's compensation acts which the omission accomplishes has been sufficiently indicated.

"*The court concludes that the word 'about' as applied to a mine, fixes the*

*locality of the accident for which compensation may be recovered, and that the accident must occur in such close proximity to the mine that it is within the danger zone necessarily created by those peculiar hazards to workmen which inhere in the business of operating the mine. If the accident occur outside this zone, the distance from the mine, whether very near or very far, is immaterial.* In this case the workman was a messenger who had left one mine on an errand and had not arrived at the other. He was injured on the premises of the railway company, which lay between the two mines." (Emphasis supplied.) (p. 214.)

In the Hicks case, *supra,* the plaintiff was likewise directly employed by the principal, Swift and Company. The principal delivered meat to his customers by truck. It was plaintiff's duty to deliver the meat with defendant's truck from defendant's packing house to defendant's customers. The workman was injured while unloading the meat at the place of a customer. In reversing the trial court liability of the principal, the employer, was denied. It was held:

"The workmen's compensation act, being by its terms limited to injuries occurring 'on, in or about' a factory or other designated establishment, does not authorize a recovery against the owner of a packing house on account of injuries received by a truck driver while engaged in *delivering meat to customers.*" (Syl. ¶ 2.) (Emphasis supplied.)

In the course of the opinion it was said:

"While in charge of the truck, *after leaving the premises where the meat had been prepared,* the plaintiff was not 'within the danger zone necessarily created by those peculiar hazards to workmen which inhere in the business of operating' the packing house." (p. 763.) (Emphasis supplied.)

To the same effect see, also, *Carter v. Uhrich,* 122 Kan. 408, 252 Pac. 240 (1927). Numerous similar decisions might be cited interpreting the meaning of the words "on, in or about the premises" but that is not necessary. It is, however, highly important that decisions rendered *after* the elimination from the statute of the words "on, in or about" should not be confused with decisions rendered *before* the elimination of those words.

The words "on, in or about" were deliberately retained in subdivision (*d*) by our legislature as they have been retained in the revision of compensation acts of other states. The intent and purpose of retaining the exceptions in subdivision (*d*) is obvious. The legislature realized that the liability of the principal created by subdivision (*a*) of the statute was entirely too broad. His liability was made too broad whether the injury occurred to the workman of an independent contractor or to the workman of a subcontractor on

premises far removed from the premises of the principal and over which the latter had no management or control. Realizing these facts the legislature provided exceptions to the principal's liability in subdivision (d). The construction of buildings and of various kinds of machinery are good examples of necessary limitations on the principal's liability. A part of such work frequently needs to be done in some factory, workshop, or elsewhere, far removed from the hazardous premises on which the *principal* has undertaken to execute work. Materials need to be transported to and from the premises on which the principal has undertaken to execute the work. Finished products of special parts of the total work need to be delivered to the premises on which the principal has undertaken to execute work.

The legislature also knew that the independent contractor and frequently the subcontractor have exclusive management and control over the methods or details of special portions of work to be performed. The only concern of the principal under such circumstances is that the contractor produce the result for which the principal has employed him.

The majority opinion is based on the theory that delivery of feed was a part of the principal's business and, therefore, it is liable for any injury that occurred to an employee of Johnson, the delivering contractor, in the course of delivery. Such interpretation of subdivision (d), in my opinion, nullifies the evident legislative purpose and intent. Its effect, in this case, is to strike down subdivision (d) and to determine the case entirely on subdivision (a). Manifestly that is unjust. As already indicated, this court denied liability of the principal under the old "on, in or about" statute even where the principal had directly employed the workman to perform a part of the principal's business, the delivery of meat to customers. (*Hicks v. Swift & Co.*, supra.)

In the first place, it constitutes an exceedingly strained construction to conclude the words "on which the principal has undertaken to execute work" were intended to include any and all portions of the public streets, highways, railways, waterways or air lanes over which merchandise may be delivered. Such routes are all parts of our common and well-recognized transportation or delivery system today. I cannot believe the legislature ever intended to make the principal liable for injuries occurring at such places.

In the second place, neither such public routes of transportation

nor the points of delivery are under the "control or management" of a retailer or wholesaler of merchandise. And, of course, there was not the remotest attempt in the instant case to show the streets or highways used in making the delivery or the loading docks of Armour and Company, the point of delivery, were under the principal's "control or management."

Appellee cites no decision of this or any other court which interprets subdivision (d) or a similar provision. None is cited in the majority opinion. Limited time has prevented an exhaustive search to ascertain the interpretation of the same, or similar, provisions in compensation acts of other states. Such study as I have been able to make discloses no decision in harmony with the majority view. The decisions found are to the contrary. The English subcontractors' section served as a model for subdivision (d) of our subcontractors' section. That part of the English act provided:

"(4.) This section shall not apply in any case where the accident occurred elsewhere than on, or in, or about premises on which the principal has undertaken to execute the work or which are otherwise under his control or management." (Workmen's Compensation Act, 1906, s. 4, sub-s. 4.)

The statute was construed in *Andrews v. Andrews and Mears*, 2 K. B. 567, 1 B. W. C. C. 264 (1908). It was held:

"A workman who was employed in connection with certain paving operations by a sub-contractor, his duties being to cart materials for the work and remove rubbish, while so engaged was accidentally killed in the public street at a distance of two miles from the site of the work:—

"*Held,* that the accident had not occurred 'on, or in, or about premises' on which the principal contractor *had undertaken to execute the work, or which were 'otherwise under his control or management'* within s. 4, sub-s. 4, of the Workmen's Compensation Act, 1906, and that consequently the principal was not liable to pay compensation under the Act." (Headnote.) (Emphasis supplied.)

Several of the Lord Justices wrote opinions upon the subject. All of the opinions agreed it would be giving the exception provision of the statute "a wholly unnatural and unjustifiable meaning" to hold the principal contractor liable on the theory the accident occurred on or in or about premises on which Mears, the principal, "had undertaken to execute the work or which were otherwise under his control or management." The opinion of the county court was accordingly reversed. The report of the decision may not be available to all members of the bench and bar. The concurring opinion of Lord Justice Buckley is brief. It reads:

"I am of the same opinion, and will add a few words as to my view of the construction of s. 4. [The Lord Justice read the section, and continued:—] The question here is this: The principal had undertaken to do certain carting work from the Albert Hall; was the public street between the Albert Hall and St. Quintin's Avenue, at a distance of some two miles from the Albert Hall, 'premises on or in or about which the principal had undertaken to execute the work or which were otherwise under his control or management'? In my opinion a street, the public highway, was not for this purpose 'premises' on which the work was to be executed. That word implies some definite place with metes and bounds, say land, or land with buildings upon it. Nor was it a place 'otherwise under the control or management' of the principal. A public street is not, in my opinion, within these words at all. One might put numerous instances of work which is to be done, *coupled with the obligation of bringing and delivering the finished article* or of taking away the work to be done and bringing it back again. It seems to me that it would be impossible to say that the operation of so conveying the work over the public road is done on premises *on or in or about which the principal has undertaken to execute the work or which are otherwise under his control or management*. The result is that s. 4 does not, in my opinion, apply, and the principal here is not liable." (Emphasis supplied.) (p. 570.)

In the same case Lord Justice Kennedy, also concurring, said in part:

"The man had got a long distance on the road. The premises to which he might take the rubbish were entirely in his choice at that time, and in no sense could they be said to be under the control or management of the appellant Mears, nor was the place to which the workman was going 'premises' on or in or about which the principal had undertaken to execute any work. I cannot understand the judgment of the Court below." (p. 571.)

It appears subdivision (*d*) of our subcontractors' section was enacted in its present form in the original compensation act of 1911. (Laws 1911, ch. 218, § 4 [d].) The rule that where a statute is adopted from another state the adoption carries with it the construction placed thereon by the courts of that state is a general rule, but there are exceptions to it. The rule and the exceptions are stated in *State v. Campbell*, 73 Kan. 688, syl. ¶ 7, 85 Pac. 784. The exceptions stated do not apply here. Aside from the presumption the legislature intended the adopted section should have the meaning attributed to it by the highest court of England, the decision in the Andrews' case, in my opinion, is sound in principle. Moreover, it has been followed by and is in harmony with later well-reasoned decisions of able courts in this country.

In *Doherty's Case*, 294 Mass. 363, 2 N. E. 2d 186 (1936), the facts were:

"On the night of June 22-23, 1934, Doherty and Tupper were in the employ of one Albertini driving his truck from Albany, New York, to Boston. Albertini had a contract with *Motor Express Agency, Inc.*, by which he was to furnish to that corporation two large semi-trailer trucks with operators to make round trips between the two cities. Motor Express Agency, Inc., *was in the business of transporting merchandise as a carrier between Boston and Albany, using for that purpose the trucks which it hired from independent contractors.* It was a subscriber under the workmen's compensation act, G. L. (Ter. Ed.) c. 152. Albertini was not a subscriber. Doherty and Tupper *were carrying a load for Motor Express Agency, Inc., under the contract of their employer Albertini.* Shortly after midnight as they were descending a grade on a curve on the east side of Lebanon Mountain in the town of Hancock the semi-trailer truck left the road, tore through the fence and ran down the embankment, where it turned over and burst into flames. Both Doherty and Tupper perished in the wreck." (p. 364.) (Emphasis supplied.)

The Massachusetts exception statute provided:

"This section shall not apply to any contract of an independent or subcontractor which is merely ancillary and incidental to, and is no part of or process in, the trade or business carried on by the insured, nor to any case where the injury occurred elsewhere than on, in or about the premises on which the contractor has undertaken to execute the work for the insured or which are under the control or management of the insured." (p. 365.)

The court denied liability of the principal for the reasons, first, that "Certainly the highway was not 'under the control or management of the insured,'" and, second, that the accident did not occur on, in or about the premises on which the contractor *had undertaken to execute the work for the principal, the insured.* In the course of the opinion the court said:

"If the claimants' argument founded upon the general purpose and intent of compensation acts is sound, it would seem that it ought also to apply if Albertini had contracted to carry loads by water or even by airplane instead of by the highway. But we suppose it would hardly be contended that navigable waters or the sky constituted 'the premises' on, in or about which the contractor had undertaken to execute the work.

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"We do not mean to intimate that if the contractor has engaged to perform work in or upon the highway itself, such as construction of the way, paving, laying pipes or other work which is distinct from the use of the way for purposes of travel, those portions of the way upon which such work is actually done might not be deemed to be 'the premises on which the contractor has undertaken to execute the work' under § 18. We now decide only that § 18 *does not apply to work on a public way which consists merely in using the way under the public right for the purpose of travel."* (pp. 368, 397.) (Emphasis supplied.)

In referring to the English case of *Andrews v. Andrews and Mears,* supra, the Massachusetts court further said:

"This is the only case we have seen in which the very words in question have been construed. See, however, *Halpin v. Industrial Commission,* 319 Ill. 130; *Employers' Liability Assurance Corp., Ltd. v. Hereford,* 209 Ky. 188; *Shickley v. Philadelphia & Reading Coal & Iron Co.,* 274 Penn. St. 360." (p. 367.)

In *Employers' Liability Assur. Cor. v. Hereford,* 209 Ky. 188, 272 S. W. 380 (1925), the statutory exception to the principal's liability was worded as follows:

" 'This section shall apply only in cases where the injury occurred on, in or about the premises on which the principal contractor has undertaken to execute work or which are under his control otherwise or management.' " (p. 190.)

The court held the principal was not liable for an injury to a contractor's workman who was injured while *delivering work to the principal's premises* where such work had been completed elsewhere. The Kentucky court in construing the principal's liability under the exceptions section further said:

". . . we do not think that simply because an independent contractor *delivers his work,* completed elsewhere, *on the grounds where the principal is doing his work,* the principal is brought within section 10 of the compensation act. Otherwise, a general contractor on a building who buys, for instance, his doors and window sashes from a planing mill would be responsible for any injury which occurred in a planing mill, or to the driver of the planing mill if hurt while delivering the doors and sash on the job. We do not believe the compensation act contemplates this." (p. 191.) (Emphasis supplied.)

Other helpful cases are *Bates v. Connecticut Power Co.,* 130 Conn. 256, 33 A. 2d 342 (1943); *Siskin v. Johnson,* 151 Tenn. 93, 268 S. W. 630 (1924); *Cooper v. Dixie Construction Co.,* 45 Ga. App. 420, 165 S. E. 152 (1932); *Downing v. Stamford Community Chest, Inc.,* 125 Conn. 728, 4 A. 2d 329 (1939); Anno. 105 A. L. R. 580, 591.

In *Bates v. Connecticut Power Co.,* supra, the Connecticut court said:

"Speaking of 'premises,' *Buckley, L. J.,* in *Andrews v. Andrews & Mears,* [1908] 2 K. B. 567, 570, says: 'That word implies some definite place with metes and bounds, say land, or land with buildings upon it. A public street is not, in my opinion, within these words at all.' In *Doherty's Case,* 294 Mass. 363, 365, 2 N. E. (2d) 186, occurs the statement: 'Certainly the highway was not under the control or management of the insured.' In *State v. Ehr,* 52 N. D. 946, 953, 204 N. W. 867, in holding that an abutting owner did not own or control the street in front of his premises, the court said: 'In general, to have "control" of a place is to have the authority to manage, direct, superintend, restrict or regulate.' " (p. 261.)

In the instant case, Johnson, the contractor, was in complete charge of the delivery work. He used his own trucks. He hired his own workmen. The Kelso Feed Company had no control over the trucks, men or details of the delivery work. It was concerned only with delivery. Johnson's principal business was the hauling and transportation of feed. He had qualified as a contract carrier under the laws of the state and had secured the necessary license to operate in the state. He was an independent contractor. (*Laffery v. Gypsum Co.*, 83 Kan. 349, 354, 111 Pac. 498; *Pottorff v. Mining Co.*, 86 Kan. 774, syl. ¶¶ 1, 2, 122 Pac. 120; *Mendel v. Fort Scott Hydraulic Cement Co.*, 147 Kan. 719, 723, 78 P. 2d 868; *Lehman v. Grace Oil Co.*, 151 Kan. 145, 148, 98 P. 2d 430.)

Merchants of many communities of any size now have a regular merchants' delivery system. Some merchants employ separate independent contractors to deliver their merchandise which is likewise sold, coupled with the agreement it will be delivered to the customer. Many customers purchase articles from merchants in other cities with the agreement they will be delivered by railroads, truck lines or other means selected by the seller. Under the decision of the majority every retailer or wholesaler in this state within the purview of the compensation act, whether by operation of law or by election, who sells any article of merchandise and agrees to deliver it will be liable for injuries of an employee of the delivering contractor suffered in the course of such delivery.

It is also well to bear in mind that for delivery purposes there frequently is no direct route to a customer. A delivery contractor often fills his truck with merchandise to be delivered to numerous customers in a city. He starts out in some general direction and selects what he believes to be the most practical routes to facilitate the ultimate delivery of all articles in his possession. This procedure often takes him into all parts of a village or many parts of a large city. He makes deliveries on his way from and on his return to the premises of his principal. Was he on the proper or improper route at the time the accident occurred? If he was delivering for a large number of merchants on the same general excursion are all of them liable? If they are not all liable against whom does liability attach? These are only a few of the numerous practical and highly complicated problems certain to arise under the majority decision.

Our task is one of construction and not of legislation. I cannot

believe the legislature intended by the exceptions of a principal's liability provided in subdivision (d) to create a greater liability against the principal where the injury occurred to a workman of an independent contractor or of a subcontractor than was previously created against the principal for an injury to a workman employed directly by the principal. The decision of the majority is not only out of harmony with our own interpretation of a section of the statute while it contained the words "on, in or about" but it imposes an entirely unnatural liability on the sellers of merchandise.

BURCH, J., concurs in the foregoing dissenting opinion.