Will G. ADAMS, Jr., Plaintiff-Appellant,

v.

**FORD MOTOR COMPANY,**
**Defendant-Appellee.**

No. 76–1920.

United States Court of Appeals,
Tenth Circuit.

Argued Jan. 24, 1978.
Decided April 17, 1978.

Daniel J. Sevart of Render & Kamas, Wichita, Kan., for plaintiff-appellant.

Robert D. Ochs of Fisher, Ralston & Ochs, Topeka, Kan., for defendant-appellee.

Before McWILLIAMS, BREITENSTEIN, and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

This is an appeal from a summary judgment granted in favor of Ford Motor Company against plaintiff Will G. Adams, Jr. Adams brought an action against Ford seeking recovery for personal injuries suffered because of defendant's alleged negligence in the manufacture and distribution of an automobile, also claiming breach of warranty and strict liability in tort. Jurisdiction in the Federal District Court for the District of Kansas was based upon diversity of citizenship and damages exceeding $10,-000, under 28 U.S.C. § 1332.

After pretrial of the case, defendant Ford made a motion for summary judgment claiming it was the statutory employer of Adams within the meaning of the Kansas Workmen's Compensation law, K.S.A. 44–503. It asserted that the workmen's compensation Adams recovered from his immediate employer Steve Hull Town and County Ford, Inc., was his exclusive remedy for any injuries suffered. After consideration of the pretrial order, briefs and exhibits the Court granted the motion and dismissed the case brought by Adams. From that ruling plaintiff Adams has appealed to this Court.

It is undisputed that Adams was the service manager at Steve Hull in Wichita, Kansas. One D. E. Wilson had purchased a new 1971 Ford automobile from that agency and brought it in for service because of trouble with the car's reverse gear. Adams was standing behind an open car door while Wilson was showing him how the car "had no reverse," accelerating the engine with the car in reverse gear and Wilson's foot on the brake pedal. The car suddenly lurched backward striking Adams. The exact distance of the car movement, whether Adams fell to the floor and the extent of his injuries were in some dispute, but the trial court for purposes of the motion, assumed plaintiff was struck, knocked down and suffered injuries as a result. Plaintiff Adams conceded that he had received workmen's compensation payments from Steve Hull's insuror.

Adams admits the car was under warranty and the cost of the eventual repair work was billed to Ford Motor Company; also that Steve Hull was an authorized Ford dealer pursuant to a written sales and service contract, required to extend warranties to new car purchasers and to render services with respect to all Ford products.

Essentially the only question on this appeal is whether, under Kansas law, Adams was a "statutory employee" of Ford Motor Company within the meaning of K.S.A. 44–503. If so then the workmen's compensation he collected is his exclusive remedy. If he was not, then a remand is required for a determination of his claim against Ford based upon an alleged defective park pawl in the automobile's transmission which he contended caused his injury.

■ The Kansas Workmen's Compensation Act was and is the exclusive remedy for an injured employee against one who is his employer within the meaning of the Act. K.S.A. 44–501; *Watson v. W. S. Dickey*

*Clay Mfg. Co.,* 202 Kan. 366, 450 P.2d 10 (1969). Since Ford was not his immediate employer, it must bring itself with the "subcontracting" section, K.S.A. 44–503, to be entitled to the protection against suit afforded by the Act.

That section at the time of the injury, provided as pertinent:

(a) Where any person (in this section referred to as principal) undertakes to execute any work which ·is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then in the application of this act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed.

. . . . .

(d) This section shall not apply to any case where the accident occurred elsewhere than on, in or about the premises on which the principal has undertaken to execute work or which are otherwise under his control or management, or on, in or about the execution of such work under his control or management.

■ In its usual application this Section requires a prime contractor on a job site to guarantee workmen's compensation coverage by its subcontractors on penalty of having to pay the amount itself if the subcontractor does not have coverage. This is stated in *Hoffman v. Cudahy Packing Co.,* 161 Kan. 345, 167 P.2d 613 (1946) as follows:

A prime purpose of section 44–503 of the Workmen's Compensation Act, is to give the employees of a contractor who has undertaken to do work which is a part of the trade or business of the principal, such remedy against the principal as would have been available if they had been employed directly by the principal, and to prevent employers from evading liability under the Act by the device of contracting with outsiders to do work which they have undertaken to do as a part of their trade or business. (Syl. ¶ 4).

At first blush it appears that an interpretation of subsection (d) might determine this case, without consideration of subsection (a). That subsection (d) declares that the workmen's compensation coverage guarantee is not to apply "where the accident occurred elsewhere than on, in or about the premises on which the principal has undertaken to execute work or which are otherwise under his control or management, or on, in or about the execution of such work under his control or management."

The quoted phrase could be read to make the Act apply only to a prime contractor, *e. g.,* a builder, who has agreed to work, *e. g.,* erect a building, upon a specified physical location, and then subcontracts out all or a part of the job, or to refer to those situations where the principal (here Ford) is exercising control and management of the physical environment where the work is done.

Nearly all of the Kansas subcontractor cases have involved suits by employees of others on premises physically dominated and controlled by the party being sued. In *Lessley v. Kansas Power & Light Co.,* 171 Kan. 197, 231 P.2d 239 (1951) it was an explosion on a portion of the plant of defendant Kansas Power & Light Company controlled by the company which caused the injury. In *Watson, supra,* it was a forklift truck operated by defendant's employee on its premises which injured a trucker on the grounds to pick up a load of tile. In *Hanna v. CRA, Inc.,* 196 Kan. 156, 409 P.2d 786 (1966) a subcontractor's employee was

shocked by electric wires on defendant's premises.

The Kansas cases have gone further, however, to expressly extend coverage to employees of independent contractors who are injured on premises not in control of the principal defendant, once the work being done is found to be a part of the trade or business of the defendant. In *Swift v. Kelso Feed Co.,* 161 Kan. 383, 168 P.2d 512 (1946), a wholesale feed company contracted with an independent contractor trucker to deliver its product. An employee of the trucker was injured at the docks of a customer. He successfully forced the wholesaler to pay him workmen's compensation. The court said:

> Under the facts found by the trial court we think subdivision (d) does not relieve appellants from liability. The business of the feed company was not only selling but was delivering feed. In this case the place where it was delivering feed was the premises of Armour & Co., a place where it had "undertaken to execute work" which was a part of its trade or business. 161 Kan. at 386, 168 P.2d at 514.

The issue was obviously carefully considered by the Court, as a strong dissenting opinion was based entirely upon the argument that the location of the accident was not under defendant's control. *Swift* has been followed in a later case where an employee of an independent contractor trucker was injured in an automobile accident away from defendant's premises, out on the highway making deliveries. *Durnil v. Grant,* 187 Kan. 327, 356 P.2d 872 (1960).

Therefore we must look to the issue which has concerned most of the subcontracting cases in Kansas, whether the work done is "a part of [the principal's] trade or business." Both parties here rely upon *Hanna v. CRA, Inc.,* 196 Kan. 156, 159, 409 P.2d, 786, 789 (1966) and its statement of the test:

> This court has laid down two rather definite tests by which to determine whether the work covered by a contract is part of the principal's trade or business, *i. e.,* (1) is the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business? (2) is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal?
>
> If *either* of the foregoing questions is answered in the affirmative the work being done is part of the principal's "trade or business," and the injured employees sole remedy against the principal is under the Workmen's Compensation Act. [Emphasis added.]

In applying this standard the cases have liberally construed the law to hold that workmen's compensation coverage applies, whether or not the claim is for common law damages.

> Another rule of construction here pertinent is that the Workmen's Compensation Act is to be liberally construed. This rule of liberal construction is most frequently invoked by employees who have suffered injury and are seeking their remedy under the Act. But no different rule of construction can be adopted where an injured workman for reasons which he regards sufficient seeks a remedy outside the Compensation Act. *Hoffman v. Cudahy Packing Co.,* 161 Kan. 345, 349–50, 167 P.2d 613, 616 (1946).

The Kansas cases have sometimes struggled with the concept of whether the work being performed was inherent in and an integral part of the principal's trade or business. They have found in the affirmative where a telephone company employee was on the premises of a meat packing plant to repair an electrically-operated bell, *Hoffman v. Cudahy Packing Co., supra;* where independent contractor truckers were hired to make deliveries to customers, *Swift v. Kelso Feed, supra; Durnil v. Grant, supra;* and where an addition to an electrical generation plant was being made by a contractor, even though the utility defendant did not have any employees on its payroll skilled in and engaged in the

construction of large buildings or installation of such equipment. *Lessley v. Kansas Power & Light Co.,* 171 Kan. 197, 231 P.2d 239 (1951).

On the other hand the Court has held the work was not a part of the principal's trade or business where a building was being constructed as an addition of a plant to manufacture soap, *Hataway v. Proctor & Gamble Mfg. Co.,* 195 Kan. 335, 405 P.2d 350 (1965); nor where an independent contractor was employed to haul away the company's trash. *Henderson v. Sutton's Food City, Inc.,* 191 Kan. 145, 379 P.2d 300 (1963).

We have little difficulty, however, upholding the trial judge's determination that the granting of warranties to purchasers of automobiles manufactured by this major company are within the scope and an integral part of the trade or business of Ford Motor Company. The warranties were obviously of substantial value and contemplated the possibility of significant amounts of work to be done by dealers which had a special relationship with the manufacturer, as the contracts in evidence here show. In so holding we do not attribute any special significance to the fact Ford owned a majority stock interest in Steve Hull Town & County Ford, Inc., except as evidence of the operation in practice of the controls contained in its dealership and service agreements.

We believe the Kansas cases compel a holding that Ford is entitled to the protection of the statutory employer defense. We note that Ford successfully took the contrary position in *Elliott v. Smith,* 47 Mich. App. 236, 209 N.W.2d 425 (1973), where a salesman for a local car dealer made a claim for workmen's compensation against Ford under a statute similar to that here. Whether or not the Kansas Court would follow that case, it is distinguishable, as the individual was not performing work being billed to Ford at the time of the injury.

The decision is AFFIRMED.