No. 45,186

CLARENCE WATSON, *Appellee,* v. W. S. DICKEY CLAY MANUFACTUR-
ING COMPANY, INC. and WILLIAM SCHARTZ, *Appellants.*

(450 P. 2d 10)

Opinion filed January 25, 1969.

R. L. *White*, of Pittsburg, argued the cause, and *J. Curtis Nettels* and *D. J. Gutteridge, Jr.*, also of Pittsburg, were with him on the brief for the appellants.

*Russell Cranmer*, of Wichita, argued the cause, and *J. John Marshall, Gerald L. Michaud, Orval L. Fisher, M. William Syrios, Kenneth Ingham* and *Bradley Post*, also of Wichita, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This action was filed in the district court of Crawford County as a common law action to recover damages for personal injuries sustained by the plaintiff. The jury awarded damages of $10,000 against the defendants, W. S. Dickey Clay Manufacturing Company, Inc. and William Schartz. Appeal has been duly perfected by the defendants.

The basic question presented is whether the plaintiff was a statutory employee under K. S. A. 44-503 (a) and is thereby precluded from recovering in a common law action against the Dickey Clay Manufacturing Company, Inc. Other questions are presented as to the defendant Schartz.

Clarence Watson (plaintiff-appellee) is a truck owner and driver who came upon the premises of W. S. Dickey Clay Manufacturing Company, Inc. (defendant-appellant), hereafter referred to as Dickey Clay, for a load of sewer tile. The premises concerned is a manufacturing plant owned and operated by Dickey Clay. William Schartz (defendant-appellant) is an employee of Dickey Clay and was operating the fork lift loader on the 16th day of December, 1963, at the time of Watson's injury. The injury occurred while the truck owned by Watson was being loaded by Schartz with tile manufactured and owned by Dickey Clay. The tile was delivered to a customer of Dickey Clay. Watson was standing on the front rail of the grain box of his truck, holding a large rack in an upright position, when a load of tile bumped the rack and caused Watson to fall to the ground, thereby causing the alleged injuries.

Dickey Clay contends that it is one of the class of employers covered by the workmen's compensation act, and by reason of purchasing workmen's compensation insurance, all of its employees are entitled to and do come within the provisions of the act; that at the time and place of the accident Watson was performing work which was an integral part of the business of Dickey Clay, and by reason thereof Watson was an "employee" of Dickey Clay and thus barred from filing the common law action herein. Dickey Clay contends Watson's sole remedy as to Dickey Clay is under the workmen's compensation act of Kansas.

In the trial court Dickey Clay filed a motion for summary judgment after issues were joined by the pleadings. Thereafter, on motion the trial court admitted deposition testimony and exhibits in connection therewith.

The record does not establish that the trial court made its pretrial order on the basis of Dickey Clay's motion for summary judgment. The pretrial order reads in part:

"The above case is before the court for pretrial conference this 19th day of September, 1966, and the following action is taken:

"1. Plaintiff states that his cause of action is based upon negligence of Schartz, an employee of Dickey Company, in the following particulars: In operating a fork lift without keeping a proper lookout; in operating a fork lift

at an excessive speed, and in not keeping the same under proper control; in failing to sound any warning to plaintiff. That the negligence of defendants was a proximate cause of his injuries and damages.

"2. Defendants both deny generally plaintiff's allegations and deny any negligence. Defendants allege that plaintiff, Watson, was an employee of defendant Dickey Company, and that his exclusive remedy is under the Workmen's Compensation Act of Kansas. Defendants raise the defense of fellow servant and assumption of risk if plaintiff is in the status of an employee of Dickey Company; if not, the defense of contributory negligence is alleged, in that plaintiff placed himself in a position of peril.

"3. There are no amendments to pleadings.

"4. *The issue of plaintiff's status as an employee of Dickey Company under the Workmen's Compensation Act, or an independent contractor is to be submitted to the court as a question of law.*

"5. Defendant Dickey Company admits that William Schartz was an employee, acting within the scope of his employment at all times material.

"On the 12th day of October, 1966, the following additional action is taken:

"1. The parties are present by counsel and present evidence consisting of the depositions of William Schartz, Grace Teter, James Kilroy, Clarence Hallberg, Clarence Watson, John Resnar, Kenneth Akers and attached exhibits, on the question of law of the status of plaintiff as an employee of Dickey Company, or an independent contractor. The court, *after considering the evidence* and arguments of counsel, rules as follows: *The plaintiff, while on defendant Dickey Company premises under the circumstances disclosed by the evidence is an independent contractor,* the plaintiff occupying the status of a business visitor.

"2. The issues of fact to be tried are:
   1. Were defendants negligent?
   2. If so, was the negligence a proximate cause of injury to plaintiff?
   3. The amount of any damages sustained by plaintiff.
   4. Was plaintiff contributorily negligent?

.    .    .    .    .    .    .    .    .    .    .    .

"The above order shall control unless modified to prevent undue hardship or injustice." (Emphasis added.)

The evidence submitted at the trial of the action was on the factual issues, and the instructions of the court pertain to the factual issues set out in the pretrial order.

The jury returned a verdict in favor of Watson and against both defendants in the sum of $10,000, from which judgment appeal has been duly perfected.

On the basic issue determined by the trial court in its pretrial order, as to whether Watson was an "employee" of Dickey Clay under the provisions of K. S. A. 44-503 (*a*) of the workmen's compensation act, we are confronted with a question as to the manner in which the record is to be reviewed in the appellate court.

The appellee Watson contends Dickey Clay submitted its motion for summary judgment to the court for determination at pretrial, and that the trial court after considering the evidence determined the issue, as appellant Dickey Clay requested, without submitting the issue to the jury.

The rule in regard to motions for summary judgment is stated in *Hanna v. CRA, Inc.*, 196 Kan. 156, 409 P. 2d 786, in the following language:

"Motions for summary judgments should not be sustained unless all the facts which are necessary to a complete determination of the issues presented are before the trial court and there is no genuine issue of any material fact. (See *Brick v. City of Wichita*, 195 Kan. 206, 403 P. 2d 964.)" (p. 162.)

From the record we surmise the trial court overruled Dickey Clay's motion for summary judgment and then found, on the basis of the depositions and exhibits submitted at the second pretrial conference, that Watson was an independent contractor, pursuant to its pretrial order that such issue be determined by the trial court.

The appellee Watson takes the position in his brief on this point that the question is whether the evidence introduced, when the matter was submitted to the trial court at pretrial, tends to support the ruling of the trial court. He argues the deposition testimony overwhelmingly supports the ruling of the trial court.

On the posture of this case in the appellate court it may be conceded the status of Watson, whether it be that of an independent contractor or a statutory employee under 44-503 (*a*), *supra,* is a question to be determined from the facts. Here the controlling facts have not been conceded or admitted by the parties and must be determined from the evidence. (See, *Herrera v. Fulton Construction Co.*, 200 Kan. 468, 436 P. 2d 364; *Hanna v. CRA, Inc.*, supra; and *Coleman v. Patti Construction Co.*, 182 Kan. 53, 318 P. 2d 1028.)

It should be noted, however, the evidence submitted to the trial court at the pretrial conference was all documentary in form. This court has recognized that under certain circumstances when the evidence is written, documentary in character, or in the form of depositions or transcripts, its duty is to decide for itself what the facts establish, substantially as it does in an original case. (*In re Estate of Kemper*, 157 Kan. 727, 145 P. 2d 103; *In re Estate of Besse,* 163 Kan. 413, 183 P. 2d 414; *White v. Turner*, 164 Kan. 659, 192 P. 2d 200; and *Boese v. Crane*, 182 Kan. 777, 324 P. 2d 188.)

The rule has been stated in other language in *Koch, Administratrix v. Prudential Ins. Co.*, 202 Kan. 229, 447 P. 2d 825, as follows:

"We have adhered to the rule that where the controlling evidence on the issue of fact provides the trial court with no peculiar opportunity to evaluate the credibility of witnesses, it is the responsibility of the court of appellate review to decide what the facts admitted in evidence establish. In *North River Ins. Co. v. Aetna Finance Co.*, 186 Kan. 758, 352 P. 2d 1060, we stated at page 759:

"'. . . In this situation, this court having the same opportunity as the trial court to consider the facts, must in effect treat the appeal as a trial *de novo.* . . .'" (p. 232.)

We find the evidence which the trial court had before it when it entered its pretrial order establishes the following facts:

Dickey Clay is a Delaware corporation, having a plant in Pittsburg, Kansas, which manufactures vitrified clay sewer pipe and related items. The plant manufactures the product from mud to the finished product, and the product is then delivered from this plant to the place it is to be installed on the job site, or to a dealer. Dickey Clay is one of the class of employers described in the workmen's compensation act, and by reason thereof it has purchased insurance for coverage under the act.

The loading, hauling and delivery of the tile is a part of Dickey Clay's business. Sales are dependent upon delivery of the merchandise. The company could not retain its competitive position and remain in business if sales did not include delivery.

The Pittsburg plant services Kansas, Nebraska, Western Missouri, the Northern two-thirds of Oklahoma, the Northwest corner of Arkansas and Northern New Mexico. Other plants are located in Birmingham, St. Louis, Lehigh, Iowa, and Meridian, Mississippi.

The gross sales for the company in 1963 were about eighteen million dollars, of which the Pittsburg plant had sales slightly in excess of five million dollars. Only about 2% of the total sales are to customers who come to the plant and pick up the tile.

Therefore, 98% of the sales require delivery to the customer. Approximately 30% of the sales are dealer sales, and approximately 70% are contract sales. Deliveries to the dealers are usually to lumber yards and deliveries to contractors are usually to the job site.

All companies in the industry provide complete delivery as part of the total selling and merchandising of the product. It is absolutely essential to the continuation of Dickey Clay's business to provide delivery of the product to the job site of the contractor or to the dealer.

Sales prices are based on delivery to the job site. It is the company's responsibility to see that trucks are available, loaded prop-

erly, and to see that the proper number of tile is delivered to the job site. Dickey Clay retains ownership of the tile until it is delivered to the job site.

Suitable truck equipment is necessary to haul the clay products. The drivers must have knowledge how to hold damage in transit to a minimum, and the know-how to comply with the consignee's requirements in making effective delivery. This includes arriving at the destination as nearly as possible to the stipulated time, and to place the merchandise as close to the requirements of the consignee as is reasonably possible. The drivers are obligated to assist in unloading the product when they reach the destination.

In December, 1963, the tile was delivered from the Pittsburg plant by Dickey Clay's own trucks and some trucks leased by Dickey Clay, and by Teter Trucking Company, Inc., Van Tassel Truck Line and Hofer Truck Line mainly.

The evidence discloses that in the month of December, 1963, 99.6% of the product sold was delivered by trucks. Only 24 loads were picked up by a customer at the plant. Truckloads totaling 347 were delivered as follows: 60 by company owned trucks; 115 by company leased trucks; 24 by customers who came to the plant; 87 by Van Tassel; 5 by Hofer and 56 by Teter. The load concerned in this accident was included in the 56 loads hauled by Teter.

Loads are normally assigned first to company owned or leased trucks, and then to truckers such as Teter. All of the trucks can haul the various types of tile. There is nothing to prevent a company truck and a Teter truck from hauling tile to the same job, and they do occasionally. Normally a driver, such as Watson, reports to the office at 7:00 a. m. to see if loads are available, and if not he waits his turn to be loaded. The driver parks the truck in the yard and then drives it to the loading dock to be loaded. The driver parks the truck at the dock and pulls it away after it is loaded. The driver must place a rack in the rear of the truck and boom the load after the truck is loaded. It is impossible for a trucker to get a load of tile by simply parking his truck at the plant. Drivers have the right to refuse to take a particular load, but they are dropped to the bottom of the load lists in such event. When this occurs the driver does not get a load on that particular day.

The truckers are not required to participate in the actual loading of the trucks. This is true not only of Dickey Clay's own drivers but the drivers of other trucks.

Truckers determine how the trucks will be loaded in order to prevent a traffic fine for being overloaded.

The Teter Trucking Company, Inc. is a trucking company which operates trucks that are leased to Teter. The lease agreement between the appellee, Clarence Watson, and the Teter Trucking Company, Inc. is reproduced in the record in full. It provides in part:

"4. It is understood that the leased equipment under this agreement is in exclusive possession, control, and use of the authorized carrier LESSEE and that the LESSEE assumes full responsibility in respect to the equipment it is operating.

. . . . . . . . . . . . . .

"9. The LESSOR [Watson] agrees (a) to deliver to the LESSEE the herein described equipment in good running order and condition; maintain at his expense the same in good working condition in order to meet the LESSEE's requirements on equipment; . . . (d) to drive himself or to furnish at his expense, a competent and qualified employee (subject to LESSEE's approval); . . . (h) to receive and put into effect instructions issued by the LESSEE regarding points of origin and destination, safety measures, routes, rest stops, loading, unloading, cargo protection, and any other specific instructions, regarding operating procedure or methods."

Teter has KCC authority to handle sewer tile from Pittsburg to all points and places in Kansas.

Teter has a contract with Dickey Clay relating to the hauling of Dickey Clay products. This agreement is reproduced in full in the record.

Teter's compensation is 15% of the gross receipts of all goods hauled by the trucker under the lease agreement with Teter, and the trucker receives 85% of the gross revenue and pays all trucking expenses specifically enumerated in the lease agreement.

The appellee, Clarence Watson, was one of the truckers involved in the Teter trucking operation.

On the day of the accident Watson arrived on the Dickey Clay premises at about 6:30 a. m. He took two trucks for the purpose of hauling tile. The other rig was operated by Watson's hired driver. Watson parked the truck in the loading dock. The trailer concerned was a 1960 Dorsey with grain sides which were 42 inches high. The trailer was 35 feet long and 7½ feet wide. The trailer had a rounding front, and a steel rail about 3 inches wide around the top of the sides of the trailer.

The appellant Schartz was employed by Dickey Clay as a tile loader. The accident occurred while Schartz was operating a fork lift loader and was placing the first package of tile on the front of the truck which was owned and operated by Watson.

A rack made out of 4-inch boards, which is about 7½ feet wide and 6 feet tall, is placed in the front of the truck. The purpose of the rack is to prevent the tile from sliding forward in the event of an accident or in sudden braking. The racks are furnished by Dickey Clay and are placed in the front and back of each load.

Ordinarily, a Dickey Clay employee places the rack in front of the truck, but Watson said he had placed the rack in front of his truck several times. On the day of the accident Watson obtained a rack from its location near a building by the loading dock and carried it into his truck.

Watson had placed 2 x 2 boards on the floor of the truck, and it was ready for loading, it being the responsibility of the trucker to see that the truck is loaded properly. At the time of the accident Watson was holding the rack to designate the place the first package of tile was to be placed. The particular load was not to be a full load, and Watson did not want to overload the front of the truck.

At the time of the accident Watson was holding the rack in an upright position. He was standing with one foot on the edge of the trailer, and one foot on the tarpaulin in the front of the truck. The rack was about 2 feet from the front of the truck bed, and the accident occurred when the first package of tile being hauled into the truck with a fork lift operated by Schartz bumped the rack, causing Watson to fall to the ground.

It is a well settled rule in this state that if a workman can recover workmen's compensation under the workmen's compensation act for an injury, the remedy is exclusive, and he cannot maintain a common law action for damages founded on negligence against a party from whom he could have recovered compensation under the act. (*Hanna v. CRA, Inc.,* supra.)

K. S. A. 44-503 (*a*) in material part provides:

"Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if the workman had been immediately employed by him; . . ."

Under the foregoing section of the workmen's compensation act, the question to be determined is whether the work performed by

Watson was part of the "trade or business" of Dickey Clay. The work concerned is the loading and hauling of tile produced and sold by Dickey Clay which was being loaded for delivery to a customer of Dickey Clay.

The purpose of the foregoing section of the Kansas workmen's compensation act was considered by this court in *Hoffman v. Cudahy Packing Co.*, 161 Kan. 345, 167 P. 2d 613, where it was stated:

"A prime purpose of section 44-503 of the workmen's compensation act is to give to employees of a contractor who has undertaken to do work which is a part of the trade or business of the principal, such remedy against the principal as would have been available if they had been employed directly by the principal, and to prevent employers from evading liability under the act by the device of contracting with outsiders to do work which they have undertaken to do as a part of their trade or business." (Syl. ¶ 4.)

In *Hanna v. CRA, Inc.*, supra, the court said:

"This court has laid down two rather definite tests by which to determine whether the work covered by a contract is part of the principal's trade or business, i. e., (1) is the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business? (2) is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal?

"If either of the foregoing questions is answered in the affirmative the work being done is part of the principal's 'trade or business,' and the injured employees [employee's] sole remedy against the principal is under the Workmen's Compensation Act." (pp. 159, 160.)

The situation in the case at bar is similar to the circumstances presented in *Swift v. Kelso Feed Co.*, 161 Kan. 383, 168 P. 2d 512. There a feed company, operating under the workmen's compensation act, as a part of its business sold and delivered feed at a delivered price which it collected from the buyer. It contracted with one who was not operating under the workmen's compensation act for the delivery of the feed on a per ton basis. An employee of the contractor sustained personal injury compensable under the workmen's compensation act, and the court held that under G. S. 1935, 44-503 the feed company was liable under the act to the injured employee of the contractor.

Other cases which shed light on the facts presently confronting the court are: *Lessley v. Kansas Power & Light Co.*, 171 Kan. 197, 231 P. 2d 239; *Bailey v. Mosby Hotel Co.*, 160 Kan. 258, 160 P. 2d 701; *Bright v. Bragg*, 175 Kan. 404, 264 P. 2d 494; *Coble v.*

*Williams,* 177 Kan. 743, 282 P. 2d 425; and *Durnil v. Grant,* 187 Kan. 327, 356 P. 2d 872. Some of our more recent cases are: *Bendure v. Great Lakes Pipe Line Co.,* 199 Kan. 696, 433 P. 2d 558; *Herrera v. Fulton Construction Co.,* supra; and *Houk v. Arrow Drilling Co.,* 201 Kan. 81, 439 P. 2d 146.

The appellee contends *Schafer v. Kansas Soya Products Co.,* 187 Kan. 590, 358 P. 2d 737, is on all fours with the factual situation in the instant case. We do not agree. The *Schafer* case and *Bendure v. Great Lakes Pipe Line Co.,* supra, fall in the same category. In each of these cases there was a contract of sale concerning merchandise that was being delivered in a truck driven by an employee of the seller, and the injury occurred on the premises of the purchaser in the course of the unloading process. The question was whether a third party negligence action by the driver, or his next of kin, was barred by 44-503 ( *a* ), *supra,* on the ground that the driver was a "statutory employee" of the purchaser. The opinion in the *Bendure* case discloses the distinguishing characteristics in such situation.

Throughout his brief the appellee Watson attempts to show that he is an independent contractor, who is not subject to the control of either Teter Trucking Company, Inc. or Dickey Clay. Considerable attention is devoted in the brief to the leasing agreement between Watson and Teeter, and to a determination made by the Internal Revenue Service of the United States Treasury Department that the truckers of Teter under the leasing agreement were independent contractors.

The deposition testimony of Watson relating to his right to take or refuse a load, his right to determine the route to take to the destination, the driving speed, the lack of control over the drivers and the equipment, are all refuted by the specific terms of the leasing agreement which Watson had with Teter, as heretofore quoted.

Whether the relationship of employer-employee existed between Teter and Watson is to be determined in workmen's compensation cases by an application of master-servant rules. In *Atwell v. Maxwell Bridge Co.,* 196 Kan. 219, 409 P. 2d 994, the court said:

". . . In workmen's compensation cases this court has applied master-servant rules in determining whether or not an employer-employee relationship existed. The general rule is that a master is a principal who employs another to perform service in his affairs and who controls or has the right to control the physical conduct of the other in the performance of the service. A servant is a

person employed by a master to perform service in his affairs whose physical conduct in the performance of the service is controlled or is subject to the right to control by the master. (*Evans v. Board of Education of Hays*, 178 Kan. 275, 278, 284 P. 2d 1068.) *It is not the exercise of direction, supervision or control over a workman which determines whether he is a servant or an independent contractor, but the right to exercise such direction, supervision or control.* (*Bowler v. Elmdale Developing Co.*, 185 Kan. 785, 787, 347 P. 2d 391; *Schroeder v. American Nat'l Bank*, 154 Kan. 721, 121 P. 2d 186; *Davis v. Julian*, 152 Kan. 749, 756, 107 P. 2d 745.) The necessity of the control element was also recognized in *Henderson v. Sutton's Food City*, 191 Kan. 145, 379 P. 2d 300." (p. 224.) (Emphasis added.)

It is readily apparent the leasing agreement between Watson and Teter provides for all of the control over Watson and his equipment that Teter desires to exercise.

The fundamental premise upon which liability is predicated in the workmen's compensation act under 44-503 (*a*), *supra*, is *the existence of a contract* between the principal and the contractor. (*Schafer v. Kansas Soya Products Co.*, supra.)

The deposition testimony of the various witnesses submitted to the trial court confirms that when a trucker under a leasing agreement with Teter appears on the premises of Dickey Clay pursuant to the contract which Teter has with Dickey Clay to deliver its products, the trucker agrees to submit to the controls that are imposed by Dickey Clay; otherwise he hauls none of Dickey Clay's products. Dickey Clay provides the load, tells the trucker when and where to park his truck to be loaded, requires the truck to be clean and ready for loading, requires the trucker to place the rack in the back of the truck and to boom the load, provides the destination, stipulates the time of arrival at the destination, requires that the load be unloaded by the driver in accordance with the instructions of the buyer of Dickey Clay's product, and requires the driver to assist in the unloading operations.

On the facts in this case Watson was engaged in performing work which was necessarily inherent in and an integral part of the business of Dickey Clay, and it was the same kind of work which was being performed by employees of Dickey Clay.

Under these facts and circumstances we hold that the appellee Watson was a statutory employee of Dickey Clay under the provisions of K. S. A. 44-503 (*a*) and entitled to recover workmen's compensation as a result of injuries sustained while his truck was being loaded at the premises of Dickey Clay on the 16th day of December,

1963. By reason thereof, the appellee's remedy under the workmen's compensation act is exclusive and he cannot maintain a common law action for damages founded on negligence against Dickey Clay from whom he could have recovered compensation under the act.

The appellant Schartz contends he should have judgment entered in his favor because (a) Watson was a fellow servant of Schartz and assumed the normal risks and dangers of his employment, including that of negligence of his fellow servant; and (b) Watson was guilty of contributory negligence as a matter of law.

Where, as here, the status of Watson is held to be that of a statutory employee of Dickey Clay under K. S. A. 44-503 (a) of the workmen's compensation act, his relationship to Schartz, the negligent employee of Dickey Clay, is that of a fellow employee.

On two previous occasions this court has considered an action by one employee against a fellow employee in a negligence action brought pursuant to K. S. A. 44-504: *Roda v. Williams*, 195 Kan. 507, 407 P. 2d 471; and *Tully v. Estate of Gardner*, 196 Kan. 137, 409 P. 2d 782. In each instance the right of the workman to maintain a common law action against a negligent fellow employee was upheld.

In the *Roda* case it was held:

"At common law, fellow employees mutually owed to each other the duty of exercising ordinary care and each was liable for a failure in that respect which resulted in injury to a fellow employee.

"The history of the Kansas Workmen's Compensation Act reveals there has never been any complete abrogation of previously existent common law and statutory rights against a negligent third party other than an employer. Rather there has been recognition and preservation of those rights with varying abridgments and adjustments where compensation might also be recovered.

"A co-employee is to be considered as 'some person other than the employer' as contemplated in K. S. A. 44-504." (Syl. ¶¶ 1, 2 and 6.)

In 1967 the Kansas legislature amended K. S. A. 44-504 (L. 1967, ch. 280, § 2) to exclude fellow employees from the operation of its provisions, but this amendment was too late to benefit the appellant Schartz in the instant case.

After a careful review of the evidence presented at the trial of this matter to a jury, we cannot say as a matter of law that Watson assumed the risks of Schartz's negligent conduct which resulted in his injury and damage, nor can we say as a matter of law that Watson was guilty of contributory negligence.

Accordingly, we hold the judgment of the lower court as to the appellant W. S. Dickey Clay Manufacturing Company, Inc., is reversed, and the judgment of the lower court as to the appellant William Schartz is affirmed.