No. 47,126

Westamerica Securities, Inc., a Corporation, *Appellee*, v. Worth C. Cornelius and Vanita P. Cornelius, *Appellants*.

(520 P. 2d 1262)

Opinion filed April 6, 1974.

*James W. Wallace,* of Scott City, argued the cause, and *Keen K. Brantley,* of Scott City, was with him on the brief for the appellants.

*Van Smith,* of Corley & Smith, Chartered, of Garden City, argued the cause, and *D. J. Vsetcka,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This was an action to recover money paid by mistake. The case was submitted to the trial court on a stipulation of the facts and the discovery depositions of two witnesses which, the parties agreed, might be considered by the court.

The mistake in question involved the value of the common stock of two corporations, one Midwestern Financial Corporation of Kansas, a relatively small insurance holding company; the other, Midwestern Financial Corporation, a large concern, whose stock was traded on the New York Stock Exchange. While we are not informed of the corporate domicile of Midwestern Financial Corporation, we shall, for purposes of clarity and convenience, refer to it as Midwestern of New York and the other corporation as Midwestern of Kansas.

Plaintiff-appellee, Westamerica Securities, Inc., conducts a brokerage business consisting of the buying and selling of stocks and securities. Its business office is located in Emporia. Defendants are husband and wife and reside in Leoti.

In 1963 a salesman for Investors Reserve Life Insurance Company called upon defendants. As a result of the contact, defendants purchased an insurance package from the salesman. The package consisted of life insurance policies and 500 shares of the common stock of Midwestern of Kansas which, as a holding company, owned the Investors Reserve Life Insurance Company. The sales pitch used by the salesman in making the sale to defendants was that the dividends on the stock of the holding company would be applied to the premiums on the insurance policies to the effect that the insurance contracts would be entirely, or in large part, self-supporting. Prior to this occasion the defendants had never before purchased or sold stock in any corporation.

In May of 1969, defendant Worth Cornelius attended a meeting of stockholders of Midwestern of Kansas at Ulysses. The defendant and other stockholders were told by a representative of the company that it and its subsidiary, Investors Reserve Life Insurance Com-

pany, had been sold to Centennial Life Insurance Company. The representative gave an optimistic view of the future of Midwestern of Kansas.

W. J. Yotter operated an insurance agency in Leoti and handled insurance business for defendants. Mr. Yotter was also, and had been since 1955, an agent and representative of plaintiff. In this capacity, Yotter handled purchases and sales of stock and mutual funds. On several occasions, Yotter had discussed investment in mutual funds with defendants. In July of 1969, Yotter invited Worth Cornelius to bring to his office the insurance policies issued by Investors Reserve Life and the stock in the holding company. Yotter proposed to liquidate the insurance contracts and sell the stock. Yotter prepared a form furnished by plaintiff which provided that defendants offered to sell 500 shares of Midwestern of Kansas. The form was executed by defendants on July 7, 1969, and was in turn forwarded by Yotter, together with the stock certificates, to plaintiff's office in Emporia. Plaintiff sold the stock in two separate sales; 400 shares were sold at $10.25 per share and the remaining 100 shares were sold in a separate sale for $10.37 per share. After deducting expenses and costs of sale, plaintiff remitted a total net of $5,115.07 for the two sales. The remittance to defendants was transmitted with reports of each sale disclosing the price per share. At the time defendants received the reports of the sales, Yotter was on a trip to Europe. Upon his return he was contacted by defendants who inquired whether the returns of the sales were correct. Defendants were assured by Yotter that plaintiff did not make mistakes.

A few days after the returns of the sales were received by defendants they were contacted by a Mr. Hendricks, a representative of Key Securities, a brokerage firm operating in Wichita. Defendants made inquiry of Hendricks concerning the sale price of Midwestern of Kansas and were informed that it was $1.50 per share. Defendants decided to buy 1170 shares through Hendricks at a price of $1.50 per share. On August 29, 1969, defendant Worth Cornelius delivered three stock certificates aggregating 1170 shares of Midwestern of Kansas to Yotter and offered to sell at a price not less than $9.50 per share. Yotter again prepared the forms for the offer to sell and had defendants execute the stock certificates in blank. Yotter then forwarded the certificates to plaintiff's office in Emporia with a letter of transmittal directing that the sale was

offered for a price not less than $9.50 per share. On September 3, 1969, plaintiff reported the sale of. the 1170 shares. The sale was made in three parts; 1000 shares at $10.87 per share; 100 shares at $11.25 per share; and 70 shares at $11.00 per share. After deducting commissions, taxes and costs a net total of $12,514.14 was remitted by plaintiff to defendants. It was stipulated that the proceeds of the stock sales were expended by defendants in financing two years of university education for two of their children and the balance used in payment of debts.

It was further stipulated that at all time during the transactions the stock of Midwestern of Kansas was selling for $1.50 per share and the stock of Midwestern of New York was selling for a price ranging between $10.00 and $11.00 per share. When the sell orders were received by plaintiff in its Emporia office its employees, through inadvertence and oversight, misread the sale orders as being for the stock of Midwestern Financial Corporation, a stock traded on the New York Stock Exchange rather than stock of Midwestern Financial Corporation of Kansas, a locally traded stock. It was not until the second sale of 1170 shares had been completed that plaintiff discovered the mistake.

After discovering the mistake, a few days after the second sale, plaintiff offered to tender back to defendants the Midwestern of Kansas stock or in the alternative pay defendants the actual value thereof and requested reimbursement for the difference from defendants. Agent Yotter on two occasions contacted defendants regarding the error, but defendants refused to reimburse plaintiff. This litigation was then initiated.

On the facts recited the trial court found the first transaction was a unilateral mistake, but that under the attending circumstances neither the law nor public policy prevented the granting of the requested relief. Concerning the second sale the court found essentially the same circumstances existing as in the case of the first sale, but further found that defendants had, as a matter of law, implied notice of the mistake. The trial court further found that there had been no change of position by defendants which would preclude restitution under the circumstances and awarded plaintiff judgment in the amount of $17,549.39. This judgment was journalized as of June 28, 1971. The concluding paragraph of the journal entry reads as follows:

"IT IS THEREFORE, BY THE COURT CONSIDERED, ORDERED, ADJUDGED AND DECREED that the plaintiff do have and recover of and from the defendants

the sum of $17,549.39, less the value of the stock in Midwest Finance Corporation of Kansas, Inc., sold by the defendants, said value to be determined as of the highest bona fide sale of said stock in the regular course of business occurring in the period from September 3rd, 1969, to the date of this judgment. The Court retains jurisdiction for determining the amount of said highest sale if the parties are unable to agree thereon. Defendants shall also be given credit for all brokerage fees, etc., involved. Costs are charged to the plaintiff."

Defendants appealed from the judgment of June 28, 1971, but after several extensions were granted the appeal was dismissed by this court on January 28, 1972.

Apparently, the parties were unable to agree or, in any event, failed to fix the value of the Midwestern of Kansas stock, as directed by the court's judgment of June 28, 1971; thus, on January 9, 1973, a journal entry was filed reflecting the trial court's calculations of the offset to which defendants were entitled. It reads:

"Now on this 6th day of January, 1973, the above entitled matter comes regularly on for hearing. Plaintiff appears by Van Smith and Don Vsetecka. Defendants appear by James W. Wallace and Keen K. Brantley, their attorneys.

"Thereupon it is determined by the Court that the offset to which the defendants are entitled for the value of the stock is $2,087.50; that the offset to which they are entitled for brokerage fees is $345.61, and that therefore after allowing credit for the offsets the plaintiff is entitled to judgment in the amount of $15,116.28, with interest thereon at the rate of 8% per annum from June 28th, 1971.

"And hereof let execution issue."

On January 26, 1973, defendants filed notice of appeal in the instant appeal. The notice of defendants was met with a motion to dismiss the appeal filed in the trial court by plaintiff. The trial court overruled plaintiff's motion. Thereafter plaintiff filed a motion to dismiss in this court, which was overruled with leave granted to renew when the case was argued on the merits. We have considered plaintiff's motion to dismiss, but have concluded the appeal should be resolved on the merits of the issues presented.

The first two points raised by defendants involve procedural matters. Defendants first claim the trial court erred in failing to honor their request for a jury trial. Defendants made a timely demand for trial by jury along with the filing of their answer. Defendants' demand was apparently denied by the trial court, but the record fails to reflect at what point during the proceedings or under what circumstances the denial occurred. Be that as it may, the parties proceeded to stipulate as to the facts and agreed that the

case be submitted to the trial court on the stipulation together with the depositions of two witnesses. From our examination of the entire record, we are unable to discern any dispute as to the facts at the trial court level nor do defendants point specifically to any factual dispute on appeal. Even though the nature of the case in the first instance may have entitled defendants to a jury trial, where the facts are not traversed and are consented to by defendants the right does not exist. The right to a jury trial only arises where there are disputed facts or where different inferences may be drawn from the disputed facts. (47 Am. Jur. 2d, Jury, § 15, p. 637.) Moreover, the record indicates the parties proceeded to stipulate the facts and submit the case to the court without defendants re-asserting their request for a jury or lodging any objection to the court proceeding with the case. Conduct or acquiescence inconsistent with an intention to insist on a jury trial may constitute waiver thereof. (*Elwood-Gladden Drainage District v. Ramsel,* 206 Kan. 75, 476 P. 2d 696; and *Cunningham v. City of Iola,* 86 Kan. 86, 119 Pac. 317.) Under the circumstances shown to exist, defendants have failed to establish error in this regard.

Defendants' next contention concerning procedure is that the trial court erred in permitting plaintiff to submit additional stipulations of fact over defendants' objection. The record reflects that when the case was first called for argument on the facts then stipulated, the plaintiff objected to three paragraphs of the stipulation, they were stricken by the court without objection. At this point, plaintiff asked for additional stipulations—defendants objected. The trial court overruled defendants' objections and reset the case for trial, granting both parties the opportunity to offer any additional testimony or to stipulate further. Plaintiff prepared further stipulations which were entered into by defendants. In view of the fact that defendants joined in the further stipulations, their position appears to be inconsistent. In any event, this court has long been committed to the rule that it is discretionary whether a trial court may permit a party to reopen a case to introduce additional evidence, and our decisions approve that practice where the record fails to disclose conduct amounting to abuse of discretion. (*Anderson v. Berg,* 202 Kan. 659, 451 P. 2d 248; *In re Estate of Cox,* 184 Kan. 450, 337 P. 2d 632, and *In re Estate of Wittman,* 161 Kan. 398, 168 P. 2d 541.)

For their third claim of error defendants assert:

"The Court erred in ordering restitution on the part of defendants in the absence of tender on, the part of plaintiff to defendants of the stock sold on the first sale, or its value, and the value of the stock at the second sale at a value of not less than $9.50 per share."

This point of defendants actually lacks a basis in fact. It was stipulated that plaintiff offered to tender back the Midwestern of Kansas, or in the alternative pay to defendants the actual value thereof. As shown in the portion of the journal entry previously quoted, the trial court did in fact give defendants credit for the value of the Midwestern of Kansas stock relinquished to plaintiff plus brokerage fees. The journal entry clearly shows the aim of the court was to prevent any unjust enrichment of either party, and that the court did in fact return the parties to their status quo.

Defendants assert that plaintiff was negligent when it sold defendants' stock; and that such negligence precludes recovery by plaintiff of the proceeds of the sale unless defendants can be returned to status quo. In support of their position defendants cite this statement taken out of context from 66 Am. Jur. 2d, Restitution and Implied Contracts, [Effect of Negligence], § 131, p. 1063:

". . . [I]t has been held that an action for the recovery of money will not lie where money has been paid by a mistake which arose from the fault or negilgence of the party paying, and cannot be recovered without prejudice to the party who has received it." (p. 1064.)

The principle cited by defendants is pertinent where the circumstances of the case are such that negligence may be relevant in determining whether the allowance of recovery is equitable. The rule applicable to the instant case is set forth in the same section (131) as follows:

". . . [T]he prevailing view is that in the absence of a change of position upon the part of the payee, the failure of one paying money to another under a mistake of fact to use ordinary care to avoid such mistake will not defeat his right to recover it back in an action for money had and received. In other words, the general principle is said to be that where money is paid under a mistake of fact, it is no defense to an action brought to recover it that the mistake arose through the plaintiff's negligence, if such negligence caused the defendant no harm." (p. 1064.)

The general rule that lack of due care does not preclude recovery is also set out in Restatement of the Law, Restitution, § 59, p. 232:

"A person who has conferred a benefit upon another by mistake is not precluded from maintaining an action for restitution by the fact that the mistake was due to his lack of care."

In the instant case the trial court, by giving defendants' the setoff credit, has equitably replaced defendants to status quo financially.

Defendants next contend the findings and conclusions of the trial court are contrary to the evidence. Since this case was heard on a stipulation of facts the usual rules (K. S. A. 60-252 [a]; *Short v. Sunflower Plastic Pipe, Inc.,* 210 Kan. 68, 500 P. 2d 39), governing the scope of appellate review are not applicable. We have held that when an action is tried to the court upon a written stipulation of facts or the evidence is written or documentary in form, either by way of deposition or transcript, an appellate court within certain limitations can decide for itself what facts have been established essentially as is done in an original trial. (*In re Estate of Bernatzki,* 204 Kan. 131, 460 P. 2d 527; *Watson v. Dickey Clay Mfg. Co.,* 202 Kan. 366, 450 P. 2d 10; and *Koch, Administratrix v. Prudential Ins. Co.,* 202 Kan. 229, 447 P. 2d 825.) We have examined the stipulations and depositions reproduced in the record and can find no fault with the findings and conclusions announced by the trial court. The salient facts are that this unfortunate occurrence stemmed from the mistake in the identity of the two corporations involved; that with respect to the first sale the mistake was unilateral; that because of implied notice of mistake the second sale should be treated in law as a mutual mistake; and that the position of defendants had not changed so as to foreclose recoverey by plaintiff. The findings and conclusions are based upon essentially undisputed evidence.

Defendants' fifth point that judgment is contrary to law and other points raised are tied into the points previously discussed. Defendants cite the rule concerning a broker's duty to carry out the instructions of his principle. (12 Am. Jur. 2d, Brokers, § 121, p. 867.) This rule, of course, is subject to the general rules of law pertaining to mistakes which have been heretofore discussed. (Restatement of the Law, Restitution, § 142 [Illustration 6], p. 572.)

Defendants say the trial court erred in concluding the second sale was made under circumstances which constitute a mutual mistake of fact. In this regard the trial court specifically determined from the facts that the defendants had "implied notice of a mistake." Prior to the second sale defendant Worth Cornelius admitted he knew of the existence of another corporation with a similar name whose stock was listed on the New York Stock Exchange. This knowledge, coupled with the extraordinary profit made from

the first sale, the quick repurchase of the same type of stock at its true price and a quick resale at the exaggerated price, constitutes a sufficient basis for the trial court's conclusion of implied notice. It is difficult to conceive that a reasonable man, acting in good faith, would not have suspected a mistake under these circumstances. It is a firmly established general rule that money paid to another under the influence of a mistake of fact may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require a refund. (66 Am. Jur. 2d, Restitution and Implied Contracts, § 119, p. 1055.)

Concerning defendants' claim of change of circumstances in that the money was spent for two years of education for their two children and to pay debts, the record discloses that within a few days after defendants received plaintiff's check for the second sale in September of 1969, defendants were informed by plaintiff that a mistake had been made. This was less than two months after the first sale. The evidence shows nothing was done by defendants to change their circumstances during this short period of time. In order that a change of position be such as will defeat an action to recover money paid by mistake, the change must be detrimental to the payee, material and irrevocable and such that the payee cannot be placed in status quo. If the payee uses the erroneous payment to pay debts existing when he received the money, or to pay living expenses, there is no change of position as will be a defense to an action to recover the payment. (66 Am. Jur. 2d, Restitution and Implied Contracts, § 136, p. 1068; and 40 A. L. R. 2d, Anno., [Restitution-Payment Under Mistake], § 5, p. 1013.)

The foregoing principles pertaining to an action for the recovery of money paid by mistake and change of position as a defense thereto have been substantially adopted and followed by this court in the case of *North River Ins. Co. v. Aetna Finance Co.*, 186 Kan. 758, 352 P. 2d 1060. North River brought suit to recover back money paid to Aetna in the mistaken belief that an insured automobile had been stolen. Aetna relied entirely upon the defense of change of position based on its action in releasing a chattel mortgage on the automobile in question and paying a sum to its debtor. Pointing out that Aetna could have reasserted its mortgage which was released under a mistake, we held Aetna's action did not constitute such a change of position as would defeat North River's

suit. With respect to an action to recover money paid under mistake and change of position as a defense, we held:

"An action to recover money paid to the defendant under a mistake of fact sounds in quasi contract, and the court will imply a promise to repay on the part of defendant.

"The defense of change of position asserted by a defendant amounts to a plea of estoppel *in pais,* and is an affirmative defense which must be pleaded and proved by the defendant." (Syl. ¶¶ 2, 3.)

Finally, defendants claim error in the trial court's order of January 6, 1973, directing payment of interest from the date of judgment on January 28, 1971. As to the rights of parties, the trial court's judgment of June 28, 1971, was a final determination. Plaintiff's judgment became a liquidated claim for purposes of accrual of interest on that date; the information necessary to establish the net amount due plaintiff had been firmly and irrevocably established in the stock exchange record. A claim becomes liquidated when both the amount due and the date on which it is due are fixed and certain, or when the same becomes definitely ascertainable by mathematical computation. (*Phelps Dodge Copper Products Corp. v. Alpha Construction Co.,* 203 Kan. 591, 455 P. 2d 555.)

Finding no error the judgment is affirmed.