458 F.Supp. 189 (1978)
Warren K. AKERSON et al., Plaintiffs,
v.
Giri Raj GUPTA et al., Defendants.
No. 77-123C(3).
United States District Court, E. D. Missouri, E. D.
October 18, 1978.
*190 Charles G. Siebert, Schlafly, Griesedieck, Ferrell & Toft, St. Louis, Mo., for all plaintiffs.
Richard Wolff, Kappel, Neill, Staed & Wolff, Clayton, Mo., for defendants.

ORDER
NANGLE, District Judge.
Pursuant to the memorandum filed this date,
IT IS HEREBY ORDERED that plaintiffs' motion for summary judgment be and is granted and that defendants' motion for summary judgment be and is denied.
IT IS FURTHER ORDERED that plaintiffs shall have judgment against defendants in the amount of $14,238.65 at defendants' costs.

MEMORANDUM
This matter is before the Court upon cross motions for summary judgment. Plaintiffs, general partners of a Missouri limited partnership known as Edward D. Jones & Co., brought suit, seeking relief from a sale of stock. In Count I of the complaint, plaintiffs seek rescission. Count II seeks restitution.
The undisputed facts herein are as follows: In December, 1975, defendants purchased 500 shares of Pacific Power and Light Company no par $2.48 stock at a price of $25.03 per share. In January, 1976, defendant Giri Gupta met with Jack Cahill, a representative of Jones & Co., in Macomb, Illinois. In a subsequent telephone call to Cahill, Gupta asked Cahill what the market price of the Pacific stock was. Cahill looked at a Standards and Poor's Stock Guide in his Macomb Office which listed only one preferred issue for that stock, a 5% preferred issue. Cahill checked with the St. Louis office of Jones & Co. and obtained a price quote of approximately $55.00 per share. Cahill so informed Gupta. Dr. Gupta told Cahill to place an order to sell 500 shares of Pacific Power and Light preferred stock at a limit order of $60.00 per share. At this time, Cahill was not aware that there was a difference between no par $2.48 stock and 5% par stock; it was Dr. Gupta who advised Cahill that the stock was preferred. There was no discussion at this time of the original purchase price of the stock which Gupta sought to sell. On March 4, 1976, Gupta authorized Cahill to sell the 500 shares at market price. On March 4, Jones & Co. sold 300 shares at $56.00 per share and 200 shares at $54.00 per share. Defendants Dr. and Mrs. Gupta received confirmation slips for the sales. These slips indicate that the stock sold was 5% stock; Dr. Gupta only checked the price thereon. On or about March 4, 1976, Dr. Gupta took the stock certificate for the 500 shares of $2.48 stock to Mr. Cahill in Macomb, Illinois. Subsequently, the Guptas received $27,237.80 as full payment for the sale.
In June, 1976, Mr. Cahill called Dr. Gupta and informed him that the stock sold was not the stock received. Jones & Co. first discovered the error when the Midwest Stock Clearing Corporation returned the certificate as not being the stock required to be delivered. Upon the Guptas' refusal to deliver 5% preferred stock, Jones & Co. bought 500 shares of 5% preferred stock. At the same time, Jones & Co. sold the $2.48 preferred stock received from the Guptas at a price of $26.00 per share. The amount received therefore was $13,000.00; no commission was charged. Sometime thereafter, Jones & Co. demanded that the Guptas pay $14,238.65, the difference between the proceeds received by the Guptas for the sale of the 5% preferred stock and the proceeds received by Jones & Co. for the sale of the no par $2.48 stock. The Guptas have not paid the same and have refused an offer of rescission. Defendants purchased a house, with the funds received from the sale of the stock; the purchase occurred after defendants had been notified of the error.
*191 The first issue raised herein is whether Missouri or Illinois law applies. Both parties agree that the applicable rules are set out in §§ 6 and 188, Restatement 2d, Conflict of Laws. See Havenfield Corp. v. H & R Block, Inc., 509 F.2d 1263 (8th Cir. 1975), cert. denied, 421 U.S. 999, 95 S.Ct. 2395, 44 L.Ed.2d 665 (1975). Thus, the factors to be considered are the place of contracting; the place of negotiations; the place of performance; the location of the subject matter of the contract; and the domicile, residence, nationality, place of incorporation and place of business of the parties. Defendants are citizens of India but permanently reside in Illinois. Plaintiffs are partners of a Missouri limited partnership having offices in both Illinois and Missouri. The contracting, negotiations and location of the subject matter of the contract were all in Illinois. Defendants reside in Illinois and plaintiffs' partnership maintains an office in Illinois. Thus, the Court concludes that Illinois has the most significant contacts with this transaction and that its law should apply.
In Stifel, Nicolaus & Company v. Coloia, 2 Ill.App.3d 224, 276 N.E.2d 408 (1971), defendants sold 400 shares of a stock to the plaintiff. It was later discovered that there had previously been a reverse split of the stock and the defendants had only 80 shares. The court held for the plaintiff:
It is inescapable that plaintiff in the instant case, by mistake, paid defendants more than the proceeds of sale of their stock. Whether or not this mistaken overpayment was made negligently, it may be recovered, as actions of this nature are governed by equitable principles. Defendants have no right to retain their windfall. Id. at 412.
This position is the prevailing view. See Westamerica Securities, Inc. v. Cornelius, 214 Kan. 301, 520 P.2d 1262 (1974); Ohio Co. v. Rosemeier, 288 N.E.2d 326 (Ohio App. 1972); 66 Am.Jur.2d Restitution and Implied Contracts. Thus, the general rule is that
. . . money paid to another under the influence of a mistake of fact, that is, on the mistaken supposition of the existence of a specific fact that would entitle the other to the money, which would not have been paid if it had been known to the payor that the fact was otherwise, may be recovered, provided the payment has not caused such a change in the position of the payee that it would be unjust to require a refund. The ground on which the rule rests is that money paid through misapprehension of facts belongs, in equity and good conscience, to the person who paid it. 66 Am.Jur.2d Restitution and Implied Contracts § 119 at p. 1055.
It is often said that a mistake must be mutual to permit a recovery of money paid under its influence, but this does not seem to be essential, for if a person pays money under an honest mistake of fact on his part, although it is received by the payee with full knowledge, he may recover the money so paid . . .. Id. at § 123, p. 1058.
Although . . . some cases are to the effect that if a person might, by the exercise of reasonable diligence, have ascertained the facts, he may not, on the ground of ignorance or mistake, recover money paid, the prevailing view is that in the absence of a change in position upon the part of the payee, the failure of one paying money to another under a mistake of fact to use ordinary care to avoid such mistake will not defeat his right to recover it back in an action for money had and received. Id. at § 131, pp. 1063-64.
Defendants cite this Court to Barrett, Fitch, North & Co. v. Hudson, 403 S.W.2d 944 (Mo.App.1966) in which the court held that a unilateral mistake on the part of a stock broker, who had the means of ascertaining the truth, would not warrant rescission of the sale and return of the purchase price. While the continued validity of this holding is somewhat doubtful in view of Cameron State Bank v. Sloan, 559 S.W.2d 564 (Mo.App.1977) (court holding that negligence on the part of one party does not preclude a finding of mutual mistake), *192 the Court also notes that the Hudson case was concerned with rescission as opposed to restitution. Compare 17 Am. Jur.2d Contracts § 146 with 66 Am.Jur.2d Restitution and Implied Contracts §§ 119 et seq.
Thus, the Court concludes that unless defendants can establish a change in position, plaintiffs should prevail herein on their claim for restitution. A change in position has not occurred where the payee retained the value of the original payment although the form of the same was changed. Ohio Co. v. Rosemeier, supra at 329.
In order that a change of position be such as will defeat an action to recover money paid by mistake, the change must be detrimental to the payee, material and irrevocable and such that the payee cannot be placed in the status quo. If the payee uses the erroneous payment to pay debts existing when he received the money, or to pay living expenses, there is no change of position as will be a defense to an action to recover the payment. Westamerica Securities, Inc. v. Cornelius, supra at 1270.
See also 66 Am.Jur.2d Restitution and Implied Contracts § 136 stating that acquisition of property of value is not such a change of position as to defeat a cause of action to recover the erroneous payment.
The evidence herein fails to establish that defendants changed their position in such a manner as to defeat recovery herein. Accordingly, judgment will be entered for plaintiffs.