Daniel H. MESSERSMITH and Frances Messersmith, Appellants (Defendants),

v.

G.T. MURRAY & CO., Appellee (Plaintiff).

No. 83-41.

Supreme Court of Wyoming.

Aug. 2, 1983.

Don W. Riske, Rocky L. Edmonds and Roger L. Kahler of Riske & Edmonds, P.C., Cheyenne, for appellants.

Bert T. Ahlstrom, Jr., Cheyenne, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

BROWN, Justice.

Appellee G.T. Murray and Company filed suit to recover monies it had received from the sale of stock and mistakenly paid the appellants, Daniel and Frances Messersmith. Following a trial to the court, the judge found in appellee's favor and ordered the money returned. From the judgment, appellants raise three issues on appeal. First, they argue the mistake was a unilateral one upon the part of appellee's agent, and therefore it was insufficient to justify the rescission of the contract. Second, they claim that since appellee, as a stockbrokerage firm, had considerably more knowledge, information, and expertise, it should suffer the consequences of its mistake. Finally,

they assert that, because to their detriment they changed their position in reliance upon appellee's mistake, justice demands that they not be forced to return the money to appellee.

We affirm.

At about 9:00 a.m. on July 28, 1982, Frances Messersmith called the offices of G.T. Murray and Company. She talked with James King, a stockbroker, about the possibility of selling some stock. She stated she had no idea what it was worth but wanted to find out. · When asked the name of the stock, she read off what appeared on the stock certificate, "Western Preferred." King looked up the name and discovered that Western Preferred was selling for approximately $46 per share. Frances Messersmith expressed some surprise but indicated she had 200 shares and would like to sell them. King told her he would take care of the sale and asked her to bring the stock certificate to his office. By the time she arrived at 10:00 a.m., the sale was completed; the stock had been sold for $47 per share.

After the necessary paperwork was completed and some ten days had passed, the Messersmiths received a check in the amount of $9,260.70. This represented the net proceeds from the sale of 200 shares of Western Preferred at $47 per share.

On October 1, 1982, King received a phone call from appellee's parent company, Bache. He was informed that an error had been made in the sale of the Messersmiths' stock. It turned out that that stock had been subject to a reverse stock split two years before. At that time holders of the stock had been directed to return their stock certificates in order to receive new stock issued as a result of a merger with another company. One share of the new stock had been issued for every 40 shares turned in. Though the Messersmiths never responded to the notification, their 200 shares of the old stock actually equalled five shares of the new stock valued at $47 per share, and had a gross value of $235.

After being informed of the problem, King called the Messersmiths. He told them that they had been overpaid by about $9,000. He was advised that $8,000 had been used as a down payment on a house and the rest had been spent.

On October 8, 1982, appellee initiated this lawsuit in order to recover the overpayment. The trial court found in its favor and ordered the appellants to pay appellee $8,810.70.

Appellants first challenge the trial court's determination that a mutual mistake of fact occurred. They contend the mistake was unilateral.

In *Ohio Co. v. Rosemeier,* 32 Ohio App.2d 116, 61 Op.2d 105, 288 N.E.2d 326 (1972), a stockbroker was asked by Rosemeier if her stock, Santa Fe International, was selling for $36 per share. After the broker checked a stock exchange listing and discovered a Santa Fe International selling at $36 per share, he confirmed that it was. She then told him to sell the 500 shares she believed she owned. However, it turned out that the stock listed was a California corporation and the stock she owned was a Colorado corporation worth 80 cents a share. The appellate court concluded "the parties were mutually mistaken as to the identity of defendant's stock when sold," and thus allowed recovery. *Ohio Co. v. Rosemeier,* supra, 288 N.E.2d at 328.

■ In the present case, it appears that the mistake was mutual also. Neither party knew the true value of the stock; they were both mistaken. Further, as pointed out in *Ohio Co. v. Rosemeier,* supra, it does not matter that the broker may have negligently induced his client's mistaken belief.

Generally, other courts are in accord with the result reached in *Ohio Co. v. Rosemeier,* supra. However, most courts have not found it necessary to distinguish between mutual and unilateral mistakes with respect to mistaken sale of securities. The courts have proceeded upon the principle that

money paid under a mistake of fact, which would not otherwise have been paid, may be recovered unless the payee has changed his position to the extent that it would be unjust to require a refund. *Akerson v. Gupta,* 458 F.Supp. 189 (E.D.Mo.1978). See also, Annot., 48 A.L.R.3d 513, 516 (1973). So long as the parties can be returned to the status quo, courts should strive to achieve such a result. However, if the payees suffer damage as a result of a mistake made by the broker, recovery by the broker may be barred to the extent of the damage.

■ Second, appellants claim that since appellee was in a better position to discover the mistake, it should suffer the loss. Case law, however, fails to support appellants.

In *Westamerica Securities, Inc. v. Cornelius,* 214 Kan. 301, 520 P.2d 1262 (1974), the court considered whether a stockbroker's failure to exercise due care could bar it from recovering funds mistakenly paid to a customer. The court concluded it did not and quoted Restatement of the Law, Restitution, § 59, p. 232:

> " 'A person who has conferred a benefit upon another by mistake is not precluded from maintaining an action for restitution by the fact that the mistake was due to his lack of care.' "

Also see *Board of Education of the City of Chicago v. Holt,* 41 Ill.App.3d 625, 354 N.E.2d 534 (1976); and *Ohio Co. v. Rosemeier,* supra.

■ Lack of due care will not serve to bar an action for restitution of funds mistakenly paid where no damage to the payee has resulted.[1]

■ Finally, appellants contend that they changed their position as a result of the overpayment and that it would be unjust to force them to return the money. Normally, payees will not be required to return the overpayment where they have changed their position such that demanding a refund would be unfair. *Akerson v. Gupta,* supra;

---

1. Appellants filed a counterclaim, contending they had been damaged by the negligence of appellee's agent. However, the district court's award implicitly found that appellants had suffered no damage as a result of the agent's error.

and *Ohio Co. v. Rosemeier,* supra. To constitute such a change, the burden is on the payee to establish that the change has been detrimental to the payee and that it was material and irrevocable such that the payee cannot be returned to the status quo. *Westamerica Securities, Inc. v. Cornelius,* supra. However, a mere change in the form of the proceeds does not qualify when the payee has retained the value. *Akerson v. Gupta,* supra. Also see, 66 Am.Jur.2d, Restitution and Implied Contracts § 136 (1973). In other words, the payor can recover the proceeds only to the extent that the payee will not be damaged.

Here, appellants spent approximately $1,200 on bills. In *Ohio Co. v. Rosemeier,* supra, 288 N.E.2d at 329, the payee used the money to pay off a mortgage. The court there said: "Since the value of the original payment was retained by the defendant, she has not detrimentally changed her position by liquidating her mortgage." Accordingly, to the extent the Messersmiths paid off debts there was no loss of value.

█ Appellants applied the remaining $8,000 of the overpayment towards the purchase of a house. Though the briefs both make reference to the fact that the money was placed in escrow and subject to forfeiture, no evidence of such was produced at trial. The only competent evidence in the record is Frances Messersmith's statement that she had put $8,000 on a home. Such evidence is insufficient to establish that appellants did not retain the value. Merely putting money down on a house is just a change of form. Since the burden of proof was upon appellants to establish a loss of value and they failed to introduce any evidence to prove that they have not retained the value of the overpayment, we must affirm the trial court's finding. No change of circumstances was established.

Affirmed.